**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| **T.K., individually and in her capacity as parent and legal guardian of JOHN DOE,** on behalf of themselves and all others similarly situated, | Case No. 3:23-cv-476-GNS |
| Plaintiff, | Jury Trial Requested. |
| v. | |
| **PRIME HYDRATION LLC, CONGO BRANDS LLC, LOGAN PAUL and OLAJIDE OLAYINKA WILLIAMS OLATUNJI,** | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

*I WANT IT NOW, "I WANT THE WORKS!"*

*from the Oompa Loompa Lyrics, Willy Wonka*

**SUMMARY OF THE ACTION**

1.  This is a class action lawsuit brought on behalf of all purchasers of Defendants' PRIME Energy beverages ("PRIME Energy" or the "Product(s)"), sold online and at retail outlets, in grocery stores, and through other channels throughout the United States. Plaintiffs seek damages, restitution, and injunctive relief on behalf of a Nationwide Class and, as necessary, a California Consumer Subclass, of consumers who purchased the Product which was falsely labeled and advertised as explained herein.

1

2.   Defendants manufacture, distribute, and sell various flavors of the Products, each of which contain 200 milligrams of caffeine.  High levels of caffeine are known to lead to adverse health effects such as rapid heart rate, heart palpitations, high blood pressure, and potential disruption of sleep patterns.  Defendants' marketing and packaging caters to youth with its bright colors and hyped range of flavors, all released by internet celebrities.

3.   PRIME Energy was launched in 2023 and is the brainchild of social media superstar Logan Paul, who started it with former boxing rival Olajide Olayinka Williams Olatunji, aka "KSI".[1] Combining their YouTube and social media channels, these popular influencers have close to 100 million followers. According to experts, it's this cult-like following that has fans, primarily children, waking up at the crack of dawn to secure a can of Prime Energy.[2]

4.   Both Logan Paul and KSI are controversial and well-known YouTubers who cleverly market Prime Energy to a target audience of teenagers and youth under the age of 18.[3] Prime Energy's youth-oriented marketing campaign appeals to "Gen Z" and even "Gen Alpha" consumers with fun photographs, colorful packaging, sweet flavors, and sports arena advertising,

---

[1]  https://www. bbc.com/news/newsbeat-64145389 (last visited Aug. 8, 2023).

[2]  https://www.delish.com/food-news/a43325583/prime-energy-drink/ (last visited Aug. 5, 2023).

[3] https://www.theguardian.com/business/2023/jul/27/prime-energy-drinks-teenagers-alarm-marketing (last visited Aug. 8, 2023).

including numerous commercials and marketing stunts and ploys that cater to a youthful audience.



5.   In fact, the majority of Logan Paul and KSI's followers are 24 years or younger: "On Instagram, 61% of Paul's followers are 24 years old or younger (KSI's is 63%) and on TikTok nearly 80% of Paul's followers are 24 years old or younger according to Fohr, an influencer marketing technology company."[4]

6.   Prime Energy "provides the boost you need for any endeavor" and is the third product in the PRIME portfolio and comes in a variety of flavors including Lemon Lime, Orange Mango,

---

[4]   www.cnn.com/2023/07/10/business/prime-drink-caffeine-logan-paul-explainer/index.html (last visited Aug. 5, 2023).

Blue Raspberry, Tropical Punch and Strawberry Watermelon.[5]  Prime Energy also has an "Ice

Pop" flavor, which is based on the famous fourth-of-July icicle popular amongst minors.[6]

 

7.  PRIME Energy, on the can itself, proudly touts that it contains zero sugar, is Vegan,

contains electrolytes as well as caffeine (with a hyped-up lightning bolt graphic display.)  *See infra.*

8.  Through its youth-oriented advertising, PRIME created a wide market for young energy

drink consumers – consumers who PRIME purports should not be consuming PRIME Energy.  *See*

*infra.*

9.  Defendants' uniform marketing is intentionally designed to drive sales and increase profits,

including by targeting the positive health-conscious benefits of PRIME Energy it offers to

---

[5] https://drinkprime.com/pages/faq (last visited Aug. 5, 2023).
[6] *Id.*

consumers (including zero sugar, inclusion of electrolytes and that the Product is Vegan) and the young, unsuspecting consumers really believe that the Product is, in fact, a healthy hydration drink.

10. However, despite Defendants' consistent and pervasive marketing representations, the inordinately high caffeine content raises "a serious health concern for the kids it so feverishly targets."[7]

11. Prime Hydration, meanwhile, has made more than $250 million to date in U.S. retail sales in 2023.[8]

12. As a result of Defendants' misconduct, Plaintiffs and the putative Class Members have suffered injury in fact, including economic damages.

13. Accordingly, Plaintiffs bring this suit to halt Defendants' dissemination of false and misleading representations and to correct the false and misleading perceptions that Defendants' representations have created in the minds of reasonable consumers.

14. Plaintiffs seek damages, injunctive relief, and other equitable remedies for themselves and for the proposed Class.

**PARTIES**

15. Plaintiff T.K. is and was at all times relevant to this action a resident of the State of California and citizen of the State of California, residing in Los Angeles County California. Plaintiff T.K. brings this action individually and in her capacity as parent and legal guardian of John Doe, a 10-year-old minor child who consumed PRIME Energy on multiple occasions (hereafter collectively referred to as "Plaintiffs"), who were and are directly and proximately

---

[7] https://www.theguardian.com/business/2023/jul/27/prime-energy-drinks-teenagers-alarm-marketing (last visited Aug. 9, 2023).
[8] https://www.essentiallysports.com/esports-news-ksi-and-logan-paul-reveal-how-much-they-have-made-from-their-energy-drink-prime/; https://expandedramblings.com/index.php/prime-hydration/ (last visited Sep. 6, 2023).

harmed by Defendants' unlawful conduct as alleged in this Complaint. Plaintiff T.K. purchased PRIME Energy on multiple occasions in March of 2023.

16. Plaintiffs were induced to understand and conclude that PRIME Energy was a healthy drink, similar to an electrolyte beverage without caffeine content based on Plaintiffs' understanding of the social media campaigns.

17. Plaintiff T.K. continued to purchase PRIME Energy drinks for John Doe until she researched PRIME Energy due to John Doe's sudden mood swings and sleep issues, learning that PRIME Energy drinks were harmful to her minor child.

18. Plaintiff T.K.'s purchase, and John Doe's (defined below) consumption of PRIME Energy drinks resulted from the direct marketing to minor children.

19. Plaintiff T.K. would never have purchased PRIME Energy had she known about PRIME Energy's ill-effects.

20. Plaintiff T.K. paid a premium, or otherwise paid more for Defendants' hazardous product when she otherwise would not have, absent Defendants' omissions and misstatements.

21. Plaintiff John Doe is the 10-year-old minor child of Plaintiff T.K. ("John Doe".)  John Doe, after viewing TikTok and You-Tube advertisements and social media campaigns, begged and pleaded that Plaintiff T.K. purchase PRIME Energy drinks, which Plaintiff T.K. did.  John Doe also noted that "everyone" at school was purchasing and consuming PRIME Energy.  Upon consumption, and until John Doe ceased consuming PRIME Energy, John Doe showed signs of irritability, mood swings and difficulties sleeping.

22. Plaintiff John Doe reverted to his normal sleep schedule and personality upon cessation of consuming PRIME Energy.

6

23. Defendant Prime Hydration LLC is a corporation organized under the laws of Kentucky with its corporate headquarters located at 2858 Frankfort Avenue, Louisville, Kentucky 40206.

24. Defendant Prime Hydration LLC is affiliated with Congo Brands, which is co-owned by Max Clemons and Trey Steiger.

25. Defendant Congo Brands LLC is the primary distributor and e-commerce marketer of Prime Energy drinks.

26. Defendant Congo Brands LLC is a corporation formed under the laws of Kentucky with its corporate headquarters located at 7201 Intermodal Drive, Ste. A, Louisville, Kentucky 40258.

27. Defendant Logan Paul ("Logan Paul") is a co-founder of PRIME Hydration LLC. Logan Paul's last known state of residency is Dorado, Puerto Rico.[9]

28. Defendant Logan Paul is a well-known media personality, athlete, actor, and professional wrestler; he is currently signed to World Wrestling Entertainment, Inc. ("WWE").

29. Defendant Olajide Olayinka Williams Olatunji, also known as "KSI" (hereinafter "KSI"), is the other co-founder of PRIME Hydration LLC.  KSI's last known residency is in London, United Kingdom.[10]

30. Defendant KSI is a well-known media personality, musician, and athlete.

31. Cumulatively, both Logan Paul and KSI co-branded PRIME, each who "have endorsed and frequently promoted the energy drink, PRIME," with a 20% ownership stake in the company.[11]

---

[9] "Inside Logan Paul's swanky $13M , *New York Post,* June 3, 2021. (last visited August 31, 2023).

[10] https:/ boxrec.com/en/proboxer/896699 (last visited August 31, 2023).

[11] https://www.sportskeeda.com/mma/news-who-owner-ufc-sponsor-prime.

## JURISDICTION AND VENUE

32. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. Section 1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiffs are citizens of California and Defendants are citizens of the State of Kentucky and/ or avail themselves to the subject matter jurisdiction of the State of Kentucky, thus there is minimal diversity because Plaintiffs and Defendants are citizens of different states; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

33. This Court has personal jurisdiction over the Defendants because they maintain their corporate headquarters in this State and District, have substantial aggregate contacts with this State and District, engaged in conduct that has a direct, substantial, reasonably foreseeable and intended effect of causing injury to persons in this State and District, and because Defendants purposefully availed themselves of the laws of this State.

34. Venue is proper in this District, in accordance with 28 U.S.C. Section 1391, because a substantial part of the conduct giving rise to the Plaintiffs' and the Proposed Class's claims occurred in this District.

## FACTUAL ALLEGATIONS

### Dangers of Prime Energy

35. In January 2022, Prime beverages launched its first drink, Hydration, a sports drink containing neither sugar nor caffeine. Prime Hydration was touted as a "better for you lifestyle" beverage. One year later, Prime beverages added "PRIME Energy" to its product line (cumulatively "PRIME.")

36. As touted on its website, www.drinkprime.com:

> PRIME was developed to fill the void where great taste meets function.  With bold, thirst-quenching flavors to help you refresh, replenish, and refuel.  PRIME is the perfect boost for any endeavor.  We're confident you'll love it as much as we do.[12]

37. PRIME is sold directly to consumers at convenience stores, grocery stores, retailers nationwide, in addition to being sold at PRIME's website.

38. PRIME Energy contains 200 milligrams of caffeine, nearly double the caffeine of rival energy drinks like Monster and Red Bull, which contain between 86 and 111 milligrams of caffeine. The caffeine in one bottle of PRIME Energy is equivalent to ***nearly six cans of Coca Cola***.[13]

39. According to the Centers for Disease Control and Prevention ("CDC"), "The American Academy of Pediatrics states that caffeine and other stimulant substances contained in energy drinks have no place in the diet of children and adolescents."[14]

40. The CDC also reports that the dangers of energy drinks in adolescents include dehydration, heart complications, anxiety, and insomnia.[15]

41. In discussing the potential dangers of energy drinks, the CDC noted:

> In 2011, 1,499 adolescents aged 12 to 17 years went to the emergency room for an energy drink related emergency.[16]
>
> Some of the dangers of energy drinks include[17]:
>
> - Dehydration (not enough water in your body).

---

[12] http://drinkprime.com/pages/faq (last visited Aug. 5, 2023).

[13] https://www.usatoday.com/story/money/2023/07/09/schumer-seeks-fda-probe-caffeine-prime-drink/70395708007/ (last visited Aug. 5, 2023).

[14] https://publications.aap.org/pediatrics/article/127/6/1182/30098/Sports-Drinks-and-Energy-Drinks-for-Children-and?autologincheck=redirected (last visited Aug. 9, 2023).

[15] https://www.cdc.gov/healthyschools/nutrition/energy.htm (last visited Aug. 5, 2023).

[16] Center for Behavioral Health Statistics and Quality. *The DAWN Report: Update on Emergency Department Visits Involving Energy Drinks: A Continuing Public Health Concern.* Rockville, MD: Substance Abuse and Mental Health Services Administration; 2013.

[17] Seifert SM, Schaechter JL, Hershorin ER, Lipshultz SE. Health effects of energy drinks on children, adolescents, and young adults. *Pediatrics.* 2011:127(3), 511-528.

- Heart complications (such as irregular heartbeat and heart failure).
- Anxiety (feeling nervous and jittery).
- Insomnia (unable to sleep).

42. Indeed, Columbia University Medical Center recently published an online article on August 3, 2022 ("Caffeine and Kids") noting the adverse health effects of caffeine on children. Caffeine and Kids | Columbia University Irving Medical Center That article quoted Columbia pediatrician David Buchholz, MD, as stating that "Caffeine-containing foods and beverages can have effects on the body and mind that interfere with every aspect of what children need to thrive[.]" Dr. Buchholz noted that "There is no known safe amount of caffeine for anyone age 11 and younger," and that "[u]ntil a safe amount is determined, if it's impossible to avoid, people age 12 to 17 should have less than 100 mg of caffeine per day." Dr. Buchholz continued: "Consuming caffeine not only interferes with regular development (acquisition of skills, emotional and social health, and more), it also instigates side effects that may have long-term health consequences if a child also has underlying health conditions, such as high blood pressure, chronic kidney disease, or anxiety disorders. Bottom line: Caffeine has no nutritional value but plenty of side effects that negatively impact health." Summing up the effects of caffeine on children, Dr. Buchholz states that "Short-term effects can ruin a day but over time they can cause disruption in important relationships and in, extreme examples, school failure."

43. Taking full advantage of the lack of oversight where energy drink companies do not have to have FDA approval, PRIME Energy marketed its drinks, containing 200 milligrams of caffeine, directly to minors who exhibited, and continue to exhibit, enhanced and exacerbated complications upon consumption.

**Defendants' Lack of Concern for its Customers with its False and Deceptive Representations**

44. PRIME Energy customers, like Plaintiffs, purchased their products at major and local grocery stores, including Walmart, CVS, and Target.[18]

45. Manufacturers of energy drinks, including Prime Energy, have placed their desire for profits before consumer safety by failing to warn consumers about health risks that could lead to severe injury or death.

46. PRIME's suggestion that PRIME Energy is not recommended for children under the age of 18, buried deep on its website – in fact, the seventh point under its discussion of its products-- hardly qualifies as a valid recommendation:

> OUR PRODUCTS
>
> What products do you offer?
>
> Is PRIME gluten free?
>
> Is PRIME vegan?
>
> Is PRIME soy-free?
>
> Is PRIME kosher?
>
> Is PRIME halal?
>
> Does PRIME Energy have caffeine?
>
> PRIME Energy contains 200mg of caffeine, per 12 oz. can. PRIME Energy is not recommended for children under the age of 18, women who are pregnant or nursing or individuals who are sensitive to caffeine.

https://drinkprime.com/pages/faq.

---

[18] https://www.cnn.com/2023/07/10/business/prime-drink-caffeine-logan-paul-explainer/index.html#:~:text=A%2012%2Dounce%20can%20contains,including%20Walmart%2C%20CVS%20and%20Target.



47. Likewise, PRIME Energy's listing of caffeine, alongside an invigorating lightning bolt on its colorful packing itself makes it look healthy, attractive, and appropriate for young consumers rather than a health and heart hazard. PRIME Energy proudly touts that it contains "Zero Sugar," "300 mg ELECTROLYTES" and is VEGAN, with its chic lightning bolt listing the milligrams of caffeine contained in the beverage -- of no consequence nor import to youth --, and thereafter displaying its "DRINKPRIME.COM" website.

48. All of PRIME Energy's uniform marketing is designed to convince reasonable consumers that the Product is a healthy hydration drink containing various minerals and supplements and, accordingly, the youth to whom PRIME Energy's marketing is targeted reasonably and fairly believe that the Product does not contain ingredients known to be harmful to the human body.

49. Logan Paul and KSI, primarily known for their boxing and wrestling matches and entertaining content via their massive online followings through their YouTube channels, social media campaigns, live events and livestreams, partnering with social media personalities and continued branded content aim to leverage their joint venture with Prime Hydration and PRIME Energy to increase PRIME Energy's visibility and appeal to younger demographics and audiences.[19]

50. Prime further marketed its Products by partnering with Fortnite, the popular online video game developed by Epic Games, and released a special edition that rewarded players with in-game prizes, thereby creating a sense of exclusivity to their younger consumers.   The average age of Fortnite players is under 20 years old.[20]

51. Logan Paul and KSI's young and impressionable audience plainly relied upon their idols' marketing scheme to purchase PRIME Energy.

52. In fact, in complete derogation of certain school policies across the globe that enforce a ban on Prime products, KSI issued an angered response –not to ensure the health and welfare of school aged children – but rather to promote a frenzy and instead suggested that he would send "a truckload of Prime" to the schools to "counter this blatant wrongdoing."

---

[19]  *See, e.g.,* (344) Logan Paul & KSI Surprise Fans With Prime Energy - YouTube; (344) Logan Paul & KSI - Prime's Big Game Commercial - YouTube (Prime Hydration Super Bowl advertisement).
[20] https://whattheboxgame.com/what-is-the-average-age-of-fortnite-players-2020/ (last visited Aug. 5, 2023).



KSI tweeted his fury about the drinks being banned in schools. *(Supplied: twitter)*

*See* https://twitter.com/ksi/status/1575132073257586696.

53. Consumers, especially those targeted by Defendants, lack the expertise to ascertain the risk associated with high caffeine levels.  Accordingly, reasonable consumers must, and do rely on Defendants to advertise its Product's ingredients, health benefits, and risks accurately and honestly.  Plaintiffs rely on Defendants to not omit material facts, including the serious health concern of including 200 milligrams of caffeine in PRIME Energy. Without context or comparison, "200 milligrams" is just a number that conveyed and conveys no meaning, no message, and certainly no warning to most consumers who do not know the relative amounts of caffeine in any given product or whether such amounts are high or low, healthy or unhealthy.  Not surprisingly, consumers like Plaintiff T.K. are often shocked to learn that 200 milligrams of caffeine is nearly the equivalent of the caffeine content of a total of six 12 ounce cans of Coca Cola and certainly do not want their young children consuming that much caffeine.

54. Plaintiffs and Class Members were among the intended recipients of Defendants' deceptive representations and omissions described herein.

55. Defendants' representations and omissions, as described herein, are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

56. Plaintiff T.K., or any reasonable consumer, would not have purchased PRIME Energy for their children had they been made aware of the health concerns and risks associated with consuming PRIME Energy given the heightened caffeine levels that Defendants ignored in their marketing of the product.

**Call on the US Food and Drug Administration for Investigation and Banning of PRIME Energy Around the Globe**

57. Senate Majority Leader Chuck Schumer has called on the US Food and Drug Administration to investigate the high caffeine content of Prime Energy drinks, which he claims are being targeted to children as "one of the summer's hottest beverages for kids."[21]

58. As discussed in Schumer's letter sent to the FDA Commissioner, Dr. Robert Califf on July 10, 2023, regarding PRIME Energy:[22]

> A simple search on social media for Prime will generate an eye-popping amount of sponsored content, which is advertising. This content and the claims made should be investigated, along with the ingredients and the caffeine content in the Prime energy drink. The company reports that their drink "was developed to fill the void where great taste meets function." The website features insufficient warnings about caffeine content, despite the eye-popping amount. Again, I urge your agency to investigate Prime for its overall claims, its marketing and the caffeine content, and to seriously consider Prime's target market of children as part of any investigation.

59. Schumer's letter to the FDA called for an investigation into Prime Energy for (1) its claims, (2) its marketing targeting children, and (3) the incredibly high level of caffeine.

60. And as detailed by Schumer[23]:

> PRIME is so new that most parents haven't a clue about it, but it is born from the reels of social media and the enigmatic world of influencers. The problem here is that this product has so much caffeine in it that it puts Red Bull to shame, but unlike Red Bull, this product has one true target market: children under the age of 18, and that is why I am sounding the alarm and asking the FDA to investigate PRIME.
>
> One of the summer's hottest status symbols for kids is not an outfit. It's not a toy. It's a beverage. But buyer and parents beware, because it's a serious health concern for the kids it so feverishly targets....

---

[21] https://www.cnn.com/2023/07/09/business/prime-energy-drink-chuck-schumer-investigation/index.html (last visited Aug. 5, 2023).
[22] https://www.democrats.senate.gov/newsroom/press-releases/majority-leader-schumer-demands-fda-investigate-prime-for-absurd-caffeine-content-and-marketing-targeting-kids-on-social-media-schumer-warns-parents-that-summers-hottest-drink-has-so-much-caffeine-that-it-puts-red-bull-to-shame (last visited Aug. 5, 2023).
[23] *Id.*

61.   Several schools and businesses in countries across the globe have banned PRIME Energy drinks, including Australia, South Africa, the UK, Canada and New Zealand, with the warning that businesses who continue selling PRIME Energy potentially facing prosecution and monetary fines.[24]

62. In fact, Health Canada recently recalled PRIME Energy given its violation of national health regulations and stated caffeine content levels, with PRIME Energy exceeding those standards and the Products' non-compliance related to their caffeine content.[25] The same holds true in Australia,[26] and a recent ban as of August 8, 2023 in the Netherlands, with the common denominator of the banning of PRIME Energy being the associated health risks in children.[27]

63. American grocers are following in the footsteps of their foreign counterparts. In early August 2023, John Catsimatidis, the CEO of a New York grocery store chains Gristedes and D'Agostino, announced that he would stop selling PRIME Energy drinks in his stores due to concerns for children's health.[28] Catsimatidis stated that his 28 popular stores across New York City will no longer stock PRIME Energy drinks even though it has been a top-seller.[29] Catsimatidis

---

[24] *See, e.g.,* https://www..stuff.co.nz/business/132286965/trade-me-pulls-listings-for-influencer-logan-pauls-prime-energy-drink; https://www.iol.co.za/news/south-africa/kwazulu-natal/sa-schools-join-international-counterparts-in-banning-prime-drink-b1644121-e1d0-4ff5-8559-02c499d42fe3.

[25]  https://www.cbc.ca/news/health/prime-energy-cafffeine-health-canada-1.6901902

[26] Under Food Standards Australia New Zealand, PRIME Energy is not legally permitted to be sold due to its caffeine content.  https://thenewdaily.com.au/finance/2023/04/10/prime-drinks-energy-hydrations/

[27] https:// jeugdjournaal.nl/artikel/2485930-drankje-van-influencers-mag-niet-meer-verkocht-worden-in-nederland (last visited Aug. 9, 2023).

[28] https://www.dailymail.co.uk/health/article-12381711/Gristedes-DAgostino-pull-Logan-Pauls-energy-drink-Prime-shelves-concerns-childrens-health-FDA-investigates-drinks-sky-high-caffeine-levels.html; https://nypost.com/2023/08/02/logan-pauls-energy-drink-prime-yanked-by-nyc-grocery-chain-during-fda-probe/

[29] https://www.dailymail.co.uk/health/article-12381711/Gristedes-DAgostino-pull-Logan-Pauls-energy-drink-Prime-shelves-concerns-childrens-health-FDA-investigates-drinks-sky-high-caffeine-levels.html

said: "We listen to our customers and we have fears about the concerns for the health of kids as it relates to Prime and the beverage's caffeine levels and marketing, so will not be stocking it at this time."[30]

64. Prime Energy drinks are causing disruptions inside classrooms and creating health risks for children in middle school. For example, in New Jersey, Prime Energy drinks were brought to the attention of William Loughran, former principal of William R. Satz Middle School in Holmdel, NJ.[31] At the end of last school year, Principal Loughran sent an email alerting district parents about the drink after being informed about its potential dangers by the school nurse.[32] Regarding Prime's adverse health impacts on minors, Principal Loughran wrote to parents:

> "As I'm sure you could guess, this poses many potential health concerns, especially for students who take ADHD medication. Please send any students who are exhibiting rapid heart rates or sweating profusely, or who appear very red in the face, directly to my office for evaluation."[33]

## FEDERAL RULE OF CIVIL PROCEDURE 9(b) ALLEGATIONS

65. Although Defendants are in the best position to know what content is placed on their products, and other marketing and advertising associated with their products, and the knowledge that they had regarding the consumption of their products amongst minors, and their failure to disclose the hazards associated with their products, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

---

[30] *Id.*
[31] Prime Energy drink from Logan Paul criticized by Holmdel NJ principal (northjersey.com)
[32] *Id.*
[33] *Id.*

66. **WHO:** Defendants made representations on the products' packaging, online, and its marketing and advertising of the product.

67. **WHAT:** Defendants' conduct here was, and continues to be, deceptive and fraudulent because of its health-focused representations and omissions which lead reasonable consumers, especially impressionable minors, to believe that the product is safe for human consumption and beneficial to human health. Thus, Defendants' conduct deceived Plaintiff and Class Members into believing that the product was manufactured and sold with the represented health benefits and qualities. Defendants knew or should have known this information is material to reasonable consumers, including Plaintiffs and Class Members in making their purchasing decisions, yet it continued to pervasively market the product to minors.

68. **WHEN:** Defendants made material omissions and misstatements during the putative Class periods and at the time Plaintiff and Class Members purchased the products, prior to and at the time Plaintiff and Class Members made claims after realizing the product contained a level of caffeine not safe for human consumption, especially amongst minors.

69. **WHERE:** Defendants' marketing message was uniform and pervasive, carried through omissions on the product's packaging, as well on websites and other media channels and social media platforms used to market and advertise the product.

70. **HOW:** Defendants made material omissions and misstatements regarding the health hazards associated with the consumption of their products.

71. **WHY:** Defendants made material omissions and misstatements detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase and/or pay for the Product over other brands that did not make similar health-

focused representations, the effect of which was that Defendants profited by selling the products to many thousands of minors.

72. **INJURY:** Plaintiff and Class Members purchased, paid a premium, or otherwise paid more for Defendants' hazardous product when they otherwise would not have, absent Defendants' omissions and misstatements.

## CLASS ALLEGATIONS

73. Plaintiffs brings this action individually and as the representative of all those similarly situated pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), on behalf of themselves and the members of the following class:

> **Nationwide Class:** A class consisting of All persons in the United States who purchased in the United States, for personal or household consumption and not for resale or distribution, a PRIME Energy beverage ("Nationwide Class").

74. Plaintiffs T.K. and John Doe  also bring this action individually and as the representative of all those similarly situated pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), on behalf of themselves and also seek to represent the following subclass defined as:

> **California Class:** All persons who purchased a PRIME Energy beverage in California for personal or household consumption and not for resale or distribution ("California Consumer Subclass").

75. Members of the classes described are referred to herein as "Class Members" or members of the "Class."

76. Plaintiffs reserve the right to amend the Class definitions or add a Class or Classes if discovery and/or further investigation reveal that the Class definition(s) should be narrowed, expanded or otherwise modified.

77. Excluded from the Class are: (1) any judge and/or magistrate judge to whom this action is assigned; (2) any member of those judges' immediate families; (3) Defendants; (4) any of Defendants' subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; (5) counsel for the Parties; and (6) any persons who timely opt-out of the Settlement Class.

78. While Plaintiffs do not know at this time the exact number of proposed Class Members, given the nature of the claims and the volume of sales of the Product nationally, the members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, Plaintiffs are informed and believe that there are tens of thousands of members in the proposed Class, if not more, and a precise number can be ascertained through discovery.  The number of individuals who comprise the Class is so numerous that the disposition of all such person's claims in a class action, rather than in individual actions, will benefit both the parties and the courts.

79. Common questions of law and fact exist as to all members of each of the Classes and predominate over questions affecting only individual members of the Class.  Such common questions of law or fact include, but are not limited to, the following:

      a.      Whether Defendants omitted and/ or failed to disclose material facts concerning the Product;

      b.      Whether Defendants' conduct was unlawful; unfair; fraudulent and/ or deceptive;

      c.      Whether Defendants were unjustly enriched as a result of the unlawful conduct alleged herein such that it would be inequitable for Defendant to retain the benefits conferred upon it by Plaintiffs and the proposed Class;

      d.      Whether Plaintiffs and the Class have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages;

      e.      Whether Defendants' conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, et seq.;

      f.      Whether Defendants used deceptive representations in connection with the sale of the Product in violation of Civil Code section 1750, et seq.;

      g.      Whether Defendants represented the Product has characteristics or quantities that it does not have in violation of Civil Code section 1750, et seq.;

      h.      Whether Defendants advertised the Product with intent not to sell it as advertised in violation of Civil Code section 1750, et seq.

      i.      Whether Defendants' labeling and advertising of the Products is untrue or misleading in violation of Business and Professions Code section 17500, et seq.;

      j.      Whether Defendants knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, et seq.;

      k.      Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, et seq.;

      l.      Whether Defendants' conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, et seq.;

m.      Whether Defendants' conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, et seq.;

n.      Whether Defendants engaged in fraudulent behavior;

o.      Whether Defendants violated Ky. Rev. Stat. Ann. 367.110, *et seq.*

p.      Whether Defendants were unjustly enriched by its unlawful conduct;

q.      Whether Plaintiffs and the Class have sustained damages as a result of Defendant's unlawful conduct; and

r.      The proper measure of damages sustained by Plaintiffs and the Class.

80. Plaintiffs' claims are typical of the claims of the Class, and Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained competent and experienced counsel in class action and other complex litigation.

81. Plaintiffs' claims are typical of the claims of the other Members of the Class because, among other things, all Members of the Class were comparably injured through Defendant's uniform misconduct described herein.  Further, there are no defenses available to Defendant that are unique to Plaintiffs or to any member of the Class.

82. Defendants' common course of conduct give rise to the legal rights Plaintiffs seek to enforce on behalf of themselves and the other Members of the proposed Class.  Similar or identical statutory and common law violations, business practices and injuries are involved.  Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

83. Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendants' false and misleading representations. Plaintiffs and the Class each purchased a PRIME Energy beverage under the false belief that PRIME Energy was a healthy hydration

23

beverage, was a safe alternative to other energy drinks with no adverse side effects. Plaintiffs and the Class relied upon Defendants' packaging and would not have purchased the Product if they had known that it.  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Members of the Class they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and they will prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and the undersigned counsel.

84. A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually.

85. The trial and litigation of Plaintiffs' claims are manageable. Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

86. Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

87. Absent a class action, Defendants will likely retain the benefits of their wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative

action, the Class will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## CAUSES OF ACTION

### COUNT I

**Violation of California Consumers Legal Remedies Act, California Civil Code Section 1750, et seq. And Similar Statutes in Other States**

***(on behalf of Plaintiffs C.C. and John Does 1 and 2 and the California Consumer Subclass)***

88. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

89. This claim is brought against all Defendants.

90. Defendants are all deemed a "person" under Cal. Civ. Code § 1761.

91. Plaintiffs and class members are "consumers" under Cal. Civ. Code § 1761 and purchased PRIME products for personal purposes.

92. PRIME products are "goods" under Cal. Civ. Code § 1761.

93. Defendants created and implemented a scheme to create a market for energy drinks and substantially increase sales of PRIME Energy drinks through a pervasive pattern of false and misleading statements and omissions. Defendants aimed to portray PRIME Energy products as cool and trendy energy drinks, with a particular emphasis on appealing to minors, while misrepresenting or omitting key facts concerning their drinks' caffeine content and doses, addictiveness, and significant risks of substantial physical injury from using PRIME Energy drinks.

94. Advertisements and representations for PRIME Energy products concealed and failed to disclose that PRIME Energy drinks were extremely potent, powerfully addictive, posed significant risks of substantial physical injury resulting from the use of the products, and that the caffeine

consumed through one PRIME Energy drink twice exceeded the caffeine consumed through a standard 12 oz Red Bull and six times the caffeine included in a can of Coca Cola.

95. Defendants' conduct was unfair and unconscionable in that it included (i) the manufacture and sale of products with a heightened propensity to cause addiction and physical injuries and (ii) misrepresentations and omissions of material facts concerning the characteristics and safety of PRIME Energy drinks that offended public policy; were immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and caused substantial harm that greatly outweighs any possible utility from the conduct.

96. Defendants owed Plaintiffs and class members a duty to disclose facts of PRIME Energy drinks harmful contents and high risk potential for abuse and addiction because they were known and/or accessible exclusively to Defendants, who had exclusive and superior knowledge of the facts; because the facts would be material to consumers; because the Defendants actively concealed or understated them; because the Defendants intended for consumers to rely on the omissions in question; because Prime Energy drinks pose an unreasonable risk of substantial bodily injury; and because the Defendants made partial representations concerning the same subject matter as the omitted facts.

97. Defendants engaged in fraudulent and deceptive conduct by devising and executing a scheme to deceptively and misleadingly convey that PRIME products were appropriate for minors, when in fact the products never should have been marketed to minors and are especially harmful to minors due to the potent and addictive caffeine doses, addictive qualities, and health risks.

98. Defendants' conduct actually and proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased PRIME Energy drinks or would have paid

less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase PRIME Energy drinks they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered into. In addition, class members who are minors are entitled to full repayment of the amounts they spent on PRIME Energy drinks. Plaintiffs seek – on behalf of themselves and each member of the class – damages, as well as any other relief the Court may deem just or proper.

## COUNT TWO

**Violation of California False Advertising Law, Business & Professions Code Section 17500, et seq. And Similar Statutes in Other States**

***(on behalf of Plaintiffs C.C. and John Does 1 and 2  and the California Consumer Subclass)***

99. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

100.	This claim is brought against all Defendants.

101.	Defendants intended to sell PRIME Energy drinks directly and indirectly. Defendants induced consumers to buy PRIME Energy drinks and made and disseminated, and caused to be made and disseminated, from California misrepresentations and omissions that were untrue and misleading.

102.	Defendants knew or should have known that their misrepresentations and/or omissions were false and misleading and intended for consumers to rely on such misrepresentations and omissions.

103.	The misrepresentations and omissions were likely to, and in fact did, deceive reasonable consumers, including the Plaintiffs. Reasonable consumers, including the Plaintiffs, would have found it material to their purchasing decisions that PRIME's products (i) were powerfully addictive and (ii) posed unreasonable risks of substantially bodily injury resulting from the use of the products.

104.     Defendants owed Plaintiffs and class members a duty to disclose facts of PRIME Energy drinks harmful contents and high risk potential for abuse and addiction because they were known and/or accessible exclusively to Defendants, who had exclusive and superior knowledge of the facts; because the facts would be material to consumers; because the Defendants actively concealed or understated them; because the Defendants intended for consumers to rely on the omissions in question; because Prime Energy drinks pose an unreasonable risk of substantial bodily injury; and because the Defendants made partial representations concerning the same subject matter as the omitted facts.

105.     Defendants engaged in fraudulent and deceptive conduct by devising and executing a scheme to deceptively and misleadingly convey that PRIME products were appropriate for minors, when in fact the products never should have been marketed to minors and are especially harmful to minors due to the potent and addictive caffeine doses, addictive qualities, and health risks.

106.     Defendants' conduct actually and proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased PRIME Energy drinks or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase PRIME Energy drinks they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered into. In addition, class members who are minors are entitled to full repayment of the amounts they spent on PRIME Energy drinks. Plaintiffs seek – on behalf of themselves and each member of the class – damages, as well as any other relief the Court may deem just or proper.

**Violation of California Unfair Competition Law, Business & Professions Code Section 17200, et seq. And Similar Statutes in Other States**

*(on behalf of Plaintiffs C.C. and John Does 1 and 2 and the California Consumer Subclass)*

107.     Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

108.     This claim is brought against all Defendants.

109.     Prime Hydration LLC and Congo Brands are deemed as a "person" under Cal. Bus. & Prof Code Section 17201.

110.     Defendants created and implemented a scheme to create a market for energy drinks and substantially increase sales of PRIME Energy drinks through a pervasive pattern of false and misleading statements and omissions. Defendants aimed to portray PRIME Energy products as cool and trendy energy drinks, with a particular emphasis on appealing to minors, while misrepresenting or omitting key facts concerning their drinks' caffeine content and doses, addictiveness, and significant risks of substantial physical injury from using PRIME Energy drinks.

111.     Advertisements and representations for PRIME Energy products concealed and failed to disclose that PRIME Energy drinks were extremely potent, powerfully addictive, posed significant risks of substantial physical injury resulting from the use of the products, and that the caffeine consumed through one PRIME Energy drink twice exceeded the caffeine consumed through a standard 12 oz Red Bull.

112.     Defendants' conduct was unfair and unconscionable in that it included (i) the manufacture and sale of products with a heightened propensity to cause addiction and physical injuries and (ii) misrepresentations and omissions of material facts concerning the characteristics and safety of PRIME Energy drinks that offended public policy; were immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and caused substantial harm that greatly outweighs any possible utility from the conduct.

113.     Defendants owed Plaintiffs and class members a duty to disclose facts of PRIME Energy drinks harmful contents and high risk potential for abuse and addiction because they were known and/or accessible exclusively to Defendants, who had exclusive and superior knowledge of the facts; because the facts would be material to consumers; because the Defendants actively concealed or understated them; because the Defendants intended for consumers to rely on the omissions in question; because Prime Energy drinks pose an unreasonable risk of substantial bodily injury; and because the Defendants made partial representations concerning the same subject matter as the omitted facts.

114.     Defendants engaged in fraudulent and deceptive conduct by devising and executing a scheme to deceptively and misleadingly convey that PRIME products were appropriate for minors, when in fact the products never should have been marketed to minors and are especially harmful to minors due to the potent and addictive caffeine doses, addictive qualities, and health risks.

115.     Defendants engaged in conduct that is unfair and unconscionable because the targeting of minors offends public policy (in particular Cal. Bus. & Prof. Code Section 22963(a) and Cal. Penal Code Section 308(a)(1)(A)) is immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and has caused substantial harm that greatly outweighs any possible utility from the conduct.

116.     As alleged above, all Defendants participated and/or facilitated the marketing of PRIME Energy drinks to minors and took no action to curb the use of PRIME Energy products by minors. Defendants have continued the deceptive, misleading, unfair, and unconscionable practices that Defendants implemented, facilitated, and/or did not take adequate steps to end. As a result, the use of PRIME Energy drinks by minors continues to rise.

117.     Defendants' conduct actually and proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased PRIME Energy drinks or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase PRIME Energy drinks they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered into. In addition, class members who are minors are entitled to full repayment of the amounts they spent on PRIME Energy drinks. Plaintiffs seek – on behalf of themselves and each member of the class – damages, as well as any other relief the Court may deem just or proper.

## COUNT FOUR

**Violation of Kentucky Consumer Protection Act (Ky. Rev. Stat. Ann. § 367.110, et seq.)**
*(on behalf of all Plaintiffs and the Class)*

118.     Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

119.     This claim is brought against all Defendants for certain unfair and/or unconscionable conduct claims.

120.     Defendants are sellers of PRIME Energy products.

121.     Plaintiffs and class members are "persons" under the statute.

122.     Plaintiffs and class members are individuals who purchased PRIME Energy products for personal purposes.

123.     Plaintiffs and each member of the class have had direct dealings with either PRIME Energy via its website or its agents (including distributors, dealers, and sellers authorized by PRIME Energy). Further, Plaintiffs and each member of the class were third-party beneficiaries of PRIME Energy's agreements with its distributors, dealers, and sellers for the distribution, dealing, and sale of PRIME Energy products to consumers. Specifically, Plaintiffs and class members are

the intended beneficiaries of PRIME Energy's implied warranties. PRIME Energy products are manufactured with the express purpose and intent of being sold to consumers.

124.     Defendants created and implemented a scheme to create a market for PRIME Energy and substantially increase sales of PRIME Energy through a pervasive pattern of false and misleading statements and omissions. Defendants aimed to portray PRIME Energy drinks as cool and safe alternatives to other energy drinks, with a particular emphasis on appealing to minors, while misrepresenting or omitting key facts concerning PRIME Energy's caffeine content, addictiveness, and significant risks of substantial physical injury from consuming PRIME Energy.

125.     Advertisements and representations for PRIME Energy contained deceptive statements that PRIME Energy was healthy, and the advertisements and Defendants' public statements portrayed PRIME Energy drinks as safe or not harmful. Defendants used third parties and word of mouth to spread false and misleading information about PRIME Energy.

126.     Advertisements and representations for PRIME Energy drinks concealed and failed to disclose that PRIME Energy drinks were powerfully addictive, posed significant risks of substantial physical injury resulting from the use of the products, and that the caffeine consumed through one PRIME Energy drink exceeded by **six** times the caffeine consumed in coca cola products.

127.     The labels on PRIME Energy drinks failed to disclose that the products posed significant risks of substantial physical injury resulting from the use of the products.

128.     The omissions were misleading and deceptive standing alone and were particularly deceptive in light of PRIME Energy's advertising of its products and other representations.

129.     PRIME Energy's  conduct was unfair and unconscionable in that it included (i) the manufacture and sale of products with a heightened propensity to cause addiction and health risks,

and (ii) misrepresentations and omissions of material facts concerning the characteristics and safety of PRIME Energy drinks that offended public policy; were immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and caused substantial harm that greatly outweighs any possible utility from the conduct.

130.     PRIME Energy's conduct was fraudulent and deceptive because the misrepresentations and omissions had the capacity to, were likely to, and in fact did, deceive reasonable consumers including the Plaintiffs. Reasonable consumers, including the Plaintiffs, would have found it material to their purchasing decisions that PRIME Energy products (i) were extremely potent caffeine-delivery mechanisms, (ii) were powerfully addictive, (v) posed unreasonable risks of substantial bodily injury resulting from the use of the products, (iii) that the caffeine consumed through one PRIME Energy drink dramatically exceeded that of 6 coca colas, 2 Red Bulls, and (iii) PRIME Energy drinks were not in fact a healthy energy drink choice for minors. Knowledge of these facts would have been a substantial factor in Plaintiffs' and class members' decisions to purchase PRIME Energy.

131.     PRIME Energy owed Plaintiffs and class members a duty to disclose these facts because they were known and/or accessible exclusively to Defendants (and potentially other unnamed parties other than Plaintiffs and class members), who had exclusive and superior knowledge of the facts; because the facts would be material to reasonable consumers; because PRIME Energy actively concealed them; because PRIME Energy intended for consumers to rely on the omissions in question; because PRIME Energy beverages pose an unreasonable health risk; and because PRIME Energy made partial representations concerning the same subject matter as the omitted facts.

132.     Defendants engaged in fraudulent and deceptive conduct by devising and executing a scheme to deceptively and misleadingly convey that PRIME Energy beverages were appropriate for minors, when in fact the products never should have been marketed to minors and are especially harmful to minors due to the potent and addictive caffeine qualities, and health risks.

133.     In addition, all Defendants engaged in unfair and unconscionable conduct because the targeting of minors offends public policy (see, e.g., Ky. Rev. Stat. Ann. §§ 438.310, 438.313); is immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and has caused substantial harm that greatly outweighs any possible utility from the conduct.

134.     As alleged above, all Defendants participated in and/or facilitated the marketing of PRIME Energy to minors and took no action to curb the use of PRIME Energy by minors. Defendants have continued the deceptive, misleading, unfair, and unconscionable practices that Defendants implemented, facilitated, and/or did not take adequate steps to end. As a result, the use of PRIME Energy by minors continues to rise in the United States.

135.     Defendants' conduct actually and proximately caused an ascertainable loss of money or property to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased PRIME Energy or would have paid less for PRIME Energy. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase PRIME Energy they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered into. In addition, class members who are minors are entitled to full repayment of the amounts they spent on PRIME Energy products. Plaintiffs seek—on behalf of themselves and each member of the class—actual damages, punitive damages, attorney's fees and costs, and equitable relief, as well as any other relief the Court may deem just or proper.

## COUNT FIVE

### Common Law Fraud

### (*on behalf of all Plaintiffs and the Class*)

136.     Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

137.     This claim is brought against all Defendants.

138.     Defendants created and implemented a calculated scheme to market PRIME Energy drinks through a pervasive pattern of false and misleading statements and omissions directed to consumers. Defendants aimed to portray PRIME Energy drinks as cool and safe, with a particular emphasis on appealing to minors, while misrepresenting and omitting key facts concerning PRIME Energy drinks' addictiveness and significant risks of substantial physical injury and/or harm from consuming PRIME Energy drinks.

139.     Advertisements and representations of PRIME Energy drinks contained misrepresentations and deceptive omissions because they were likely to, and in fact did, mislead young consumers including Plaintiffs.

140.     Defendants owed Plaintiffs and class members a duty to disclose facts of PRIME Energy drinks harmful contents and high risk potential for abuse and addiction because they were known and/or accessible exclusively to Defendants, who had exclusive and superior knowledge of the facts; because the facts would be material to consumers; because the Defendants actively concealed or understated them; because the Defendants intended for consumers to rely on the omissions in question; because Prime Energy drinks pose an unreasonable risk of substantial bodily injury; and because the Defendants made partial representations concerning the same subject matter as the omitted facts.

141.     Defendants knew or should have known that their misrepresentations and/or omissions were false and misleading, and intended for consumers to rely on such misrepresentations and omissions.

142.     Defendants engaged in fraudulent and deceptive conduct by devising and executing a scheme to deceptively and misleadingly convey that their products were appropriate for minors, when in fact the products never should have been marketed to minors and are especially harmful to minors due to the potent and addictive caffeine doses, addictive qualities, and health risks.

143.     Defendants' conduct actually and proximately caused actual damages to Plaintiffs and class members. Absent Defendants' unfair and fraudulent conduct, Plaintiffs and class members would have behaved differently and would not have purchased PRIME Energy drinks or would have paid less for them. Defendants' misrepresentations and omissions induced Plaintiffs and class members to purchase PRIME Energy drinks they would not otherwise have purchased and enter into purchase contracts they would not otherwise have entered into. In addition, class members who are minors are entitled to full repayment of the amounts they spent on PRIME Energy drinks. Plaintiffs seek – on behalf of themselves and each member of the class -- damages, as well as any other relief the Court may deem just or proper.

### COUNT SIX

#### Unjust Enrichment

#### *(on behalf of all Plaintiffs and the Class)*

144.     Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

145.     This claim is brought against all Defendants.

146.     Defendants created and implemented a calculated scheme to market PRIME Energy drinks through a pervasive pattern of false and misleading statements and omissions directed to consumers. Defendants aimed to portray PRIME Energy drinks as cool and safe, with a particular

emphasis on appealing to minors, while misrepresenting and omitting key facts concerning PRIME Energy drinks' addictiveness and significant risks of substantial physical injury and/or harm from consuming PRIME Energy drinks.

147.     Defendants were unjustly enriched as a result of their wrongful conduct, including through the false and misleading advertisements and omissions regarding (i) whether PRIME Energy drinks were safe for minors, (ii) whether PRIME Energy drinks were extremely potent caffeinated drinks, (iii) whether PRIME Energy drinks were powerfully addictive. Defendants were also unjustly enriched through their scheme of marketing their products to minors. Cal Bus. & Prof. Code Section 22963(a) and Cal. Penal Code Section 308(a)(1)(A).

148.     Defendants requests and received a measurable benefit at the expense of Plaintiffs and class members in the form of payment for PRIME Energy drinks.

149.     Defendants appreciated, recognized, and chose to accept the monetary benefits Plaintiffs conferred onto Defendants at the Plaintiffs' detriment. These benefits were the expected result of Defendant acting in its pecuniary interest at the expense of its customers.

150.     There is no justification for Defendants' enrichment. It would be inequitable, unconscionable, and unjust for Defendants to be permitted to retain these benefits because the benefits were procured as a result of their wrongful conduct.

151.     Plaintiffs are entitled to restitution of the benefits Defendant unjustly retained and/or any amounts necessary to return Plaintiffs to the position they occupied prior to dealing with Defendant.

152.     Plaintiffs plead this claim separately as well as in the alternative to their other claims, as without such claims they would have no adequate legal remedy.

## COUNT SEVEN

**Public Nuisance**

*(on behalf of all Plaintiffs and the Class)*

153.     Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

154.     This claim is brought against all Defendants.

155.     Plaintiffs bring this claim under Kentucky law regarding public nuisances.

156.     Defendants have created a public nuisance by injuring the public health and safety of Plaintiffs and Class members through Defendants' social media campaigns pushing PRIME Energy on unsuspecting minor children, which contributed to John Doe and Class members' struggle with hyperactivity, moodiness and sleeplessness.  The negative impacts associated with such a high caffeine intake have several negative impacts and are noted above, including, inter alia, depressive symptoms, mood regulation issues and sleep deprivation.

157.     Plaintiffs and Class members have a right to be free from conduct that endangers their health and safety. Yet Defendants have engaged in conduct which endangers or injures the health and safety of the Plaintiffs and Class members by designing, marketing, and operating their respective social media campaigns in a manner that substantially promotes minor children to purchase PRIME Energy and impacts the public health, safety, and welfare of Plaintiffs and the Class.

158.     Each Defendant has created or assisted in the creation of a condition that is injurious to the health and safety of Plaintiffs and the Class members and interferes with the comfortable enjoyment of life and of John Doe and Class members.

159.     The health and safety of John Doe and members of the Class, including those who consume and/or will consume PRIME Energy as a result of Defendants' social media campaigns pushing PRIME Energy on unsuspecting minor children, are matters of substantial public interest and of legitimate concern to Plaintiffs and the Class.

160.     Defendants' conduct has affected and continues to affect a substantial number of minor children, including John Doe and members of the Class, and is likely to continue causing significant harm.

161.     Defendants' conduct has directly caused a severe disruption of the public health, order, and safety. Defendants' conduct is ongoing and continues to produce damage.

162.     This harm to youth health and the corresponding impacts to public health, safety, and the welfare of John Doe and the Class members outweigh any social utility of Defendants' wrongful conduct.

163.     The rights, interests, and inconvenience to Plaintiffs and members of the Class far outweigh the rights, interests, and inconvenience to Defendants, who have profited tremendously from their wrongful conduct.

164.     But for Defendants' actions and their widespread and vast social media campaign targeted at minor children, Plaintiff and members of the Class would not have purchased nor consumed PRIME Energy, and the public health crisis that currently exists as a result of Defendants' conduct would have been averted.

165.     Logic, common sense, justice, policy, and precedent indicate Defendants' unfair and deceptive conduct has caused the damage and harm complained of herein. Defendants knew or reasonably should have known that their design, promotion, and widespread targeting of minor children would cause John Doe and other unsuspecting Class members to purchase and consume PRIME Energy excessively, that their marketing methods were designed to appeal to youth, and that their active efforts to increase youth purchase and consumption of PRIME Energy were causing harm to John Doe and the Class members.

166.     Thus, the public nuisance caused by Defendants was reasonably foreseeable, including the financial and economic losses incurred by Plaintiffs and members of the Class.

167.     By seeking to capitalize on their success by targeting and marketing social media campaigns to minor children to increase the purchase and consumption of PRIME Energy, Defendants directly contributed to the public health crisis and the public nuisance effecting John Doe and the members of the Class.

168.     Defendants' conduct is especially injurious to Plaintiff John Doe and members of the Class because, as a direct and proximate cause of Defendants' conduct creating or assisting in the creation of a public nuisance, Plaintiffs and Class members have sustained and will continue to sustain substantial injuries.

169.     Plaintiffs have taken steps to mitigate the harm and disruption caused by Defendants' conduct, including cessation of purchase and consumption of PRIME Energy.

170.     Fully abating the nuisance resulting from Defendants' conduct will require much more than these steps taken by Plaintiffs as many unsuspecting Class members remain unaware of the harms of PRIME Energy.

171.     Pursuant to Kentucky law, Plaintiffs and the members of the Class request an order providing for abatement of the public nuisance that Defendants have created or assisted in the creation of, and enjoining Defendants from future violations of Kentucky law.

172.     Pursuant to Kentucky law, Plaintiffs also seek the maximum penalties permitted by law, including actual and compensatory damages, as a result of the public nuisance created by Defendants.

173.     Pursuant to Kentucky law, Defendants are jointly and severally liable because they have acted in concert with each other and because Plaintiff is not at fault.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, prays for judgment and relief on all Causes of Action as follows:

A. An order certifying that the action may be maintained as a Class Action;

B. An order enjoining the Defendants from pursuing the policies, acts, and practices complained of herein and requiring the Defendants to pay restitution to Plaintiffs and all members of the Class in an amount to be determined at trial;

C. Actual damages;

D. Punitive damages;

E. For pre-judgement interest from the date of filing this suit;

F. Reasonable attorney fees;

G. Costs of this suit; and

H. Such other and further relief as the Court may deem necessary or appropriate.

## JURY TRIAL DEMANDED

Plaintiffs reiterate their jury demand on all triable issues.


DATED: September 12, 2023          Respectfully submitted,


/s/ J. Chris Sanders
J. Chris Sanders (of counsel)
**BAHE, COOK, CANTLEY & NEFZGER**
1041 Goss Avenue
Louisville, KY 40217
(502) 587-2002
csanders@bccnlaw.com

Jennifer S. Czeisler (*pro hac vice* to be filed)
**STERLINGTON PLLC**
One World Trade Center
85th Floor
New York, New York 10007
Telephone: (212) 433-2993
jen.czeisler@sterlingtonlaw.com

Edward W. Ciolko (*pro hac vice* to be filed)
**STERLINGTON PLLC**
One World Trade Center
85th Floor
New York, New York 10007
Telephone: (212) 433-2993
Edward.ciolko@sterlingtonlaw.com

James M. Evangelista (*pro hac vice* to be filed)
**EVANGELISTA WORLEY LLC**
500 Sugar Mill Road
Suite 245A
Atlanta, GA 30350
Tel.: 404-205-8400
Fax: 404-205-8395
Email: jim@ewlawllc.com

*Attorneys for Plaintiff*