**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

*Filed Electronically*

| | |
|---|---|
| T.K. individually and in her capacity as parent and legal guardian of JOHN DOE, on behalf of themselves and all others similarly situated )<br><br>Plaintiff, )<br><br>vs. )<br><br>PRIME HYDRATION LLC, CONGO BRANDS LLC, LOGAN PAUL and OLAJIDE OKAYINKA WILLIAMS OLATUNJI )<br>Defendants. ) | Civil Action No. 3:23-cv-00476-GNS |

---

**DEFENDANTS PRIME HYDRATION LLC AND CONGO BRANDS LLC'S
MOTION TO DISMISS THE CLASS ACTION COMPLAINT**

---

## I.      INTRODUCTION

In this case, Plaintiff T.K. ("TK" or "Plaintiff") and her son, John Doe ("TK's Son"), ignored the label of the PRIME Energy beverages they bought which clearly and unequivocally disclosed that each can of PRIME Energy contained "200mg CAFFEINE" and cautioned to "DRINK RESPONSIBLY NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE, PEOPLE SENSITIVE TO CAFFEINE, PREGNANT WOMEN OR WOMEN WHO ARE NURSING." (PRIME Energy Label, attached at Exhibit A.)[1]

---

[1] On a motion to dismiss, "[i]n addition to the allegations in the complaint, [the Court] may also consider other materials that are integral to the complaint . . . or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 467 (6th Cir. 2011) (quoting *Ley v. Visteon Corp.,* 543 F.3d 801, 805 (6th Cir. 2008)). In this case, the Court can take judicial notice of the contents of the PRIME Energy label as it is referred to in the Complaint and is central to Plaintiff's allegations. Indeed, the quoted label warning is visible on the can of PRIME Energy pictured on page 12 of the Class Action Complaint. (ECF 1, Class Action Complaint ("Complaint" or "Compl.") ¶¶ 46-47.)



Despite these clear warnings—both of the amount of caffeine in PRIME Energy beverages and that they should not be consumed by children—Plaintiff TK seeks to hold Defendants Prime Hydration LLC ("Prime LLC") and Congo Brands LLC ("Congo Brands", and collectively "Defendants") liable for her choices (and further, for separate, independent and individual purchase choices made by a supposed class of plaintiffs).

Plaintiff brings this action asserting that the PRIME Energy beverages are "falsely labeled and advertised" and that TK "would not have purchased PRIME Energy for [her] child[] had [she] been made aware of the health concerns and risks associated with consuming PRIME Energy given the heightened caffeine levels that Defendants ignored in their marketing of the product."  (ECF 1, Class Action Complaint ("Compl.") ¶¶ 1, 56.)  Plaintiff goes so far as to allege that "Defendants made material omissions and misstatements . . . at the time Plaintiff . . . purchased the products," including "omissions on the product's packaging."  (Compl. ¶¶ 67-68.)  Plaintiff's claims fail, at a fundamental level, given that the PRIME Energy beverage labels disclose precisely what Plaintiff

asserts they omit and misstate:  the caffeine content of the beverages and that the drinks are "NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE."

Plaintiff's claims each also fail for additional reasons. Plaintiff's fraud claims each fail as they: (1) fail to allege a material omission or misrepresentation with sufficient particularity under Federal Rule of Civil Procedure 9(b); (2) fail to allege damages; and (3) fail to allege that any damages were caused by a misrepresentation made to Plaintiff or that Plaintiff viewed.  Plaintiff's claim for a violation of the California Unfair Competition Law ("UCL") fails for the additional reason that UCL claims are purely equitable and when, as here, Plaintiff does not allege facts showing that legal remedies are inadequate to correct past harms, claims for equitable relief under the UCL should be dismissed. Plaintiff's claim for a violation of the Kentucky Consumer Protection Act ("KCPA") fails because TK is not in privity with Defendants, as is required to maintain an action under the KCPA. Because Plaintiff's claim for unjust enrichment is based on fraud, it is also subject to the pleading requirements embodied in Rule 9(b)—and because unjust enrichment claims are equitable, it fails as Plaintiff has failed to allege facts showing that legal remedies are inadequate to correct past harms. Finally, Plaintiff's claim for public nuisance fails because: (1) public nuisance law does not apply to the sale of lawful products; and (2) Plaintiff's alleged nuisance does not affect the public at large—as is necessary to support a claim of public nuisance.

## II.  BACKGROUND FACTS

### A.  Factual Allegations[2]

Plaintiff asserts that this is a case about a product which was "falsely labeled and advertised," but fails to identify any label representation or advertisement that is false. (Compl.

---

[2] Consistent with Rule 12(b)(6), these allegations are taken as true only for this Motion. *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021).

¶ 1.) "Defendants manufacture, distribute, and sell various flavors of the [PRIME Energy beverages], each of which contain 200 milligrams of caffeine." (*Id.* ¶ 2.) Plaintiff argues that "Prime Energy's youth-oriented marketing campaign appeals to 'Gen Z' and even 'Gen Alpha' consumers with fun photographs, colorful packaging, sweet flavors, and sports arena advertising, including numerous commercials and marketing stunts and ploys that cater to a youthful audience." (*Id.* ¶ 4.)

Plaintiff further alleges that Defendants' advertising efforts focus on "the positive health-conscious benefits of PRIME Energy it offers to consumers (including zero sugar, inclusion of electrolytes and that the Product is Vegan) and the young, unsuspecting consumers really believe that the Product is, in fact, a health hydration drink." (*Id.* ¶ 9.) But, Plaintiff alleges that "caffeine and other stimulant substances contained in energy drinks have no place in the diet of children and adolescents." (*Id.* ¶¶ 39-42.)

Plaintiff characterizes Defendants as "hav[ing] placed their desire for profits before consumer safety by failing to warn consumers about health risks." (*Id.* ¶ 45.) Plaintiff further characterizes Defendants as "burying" the warning that PRIME Energy is not recommended for children under the age of 18 by pointing to the FAQ on the website.[3] (*Id.* ¶ 46.)

Plaintiff alleges that non-served Defendants, Logan Paul and KSI (collectively, the "Individual Defendants"), have a large social media following which they leverage "to increase PRIME Energy's visibility and appeal to younger demographics and audiences." (*Id.* ¶¶ 4, 5, 49.) Plaintiff repeatedly cites to the age of the Individual Defendants' social media following—or the

---

[3] Not only ignoring the explicit label, Plaintiff also neglects to point out that the landing page for each of the PRIME Energy flavors specifically states that it is "[f]or ages 18+." *See* https://drinkprime.com/products/strawberry-watermelon-energy (last visited Nov. 1, 2023). The Court can take judicial notice of the contents of the PRIME Energy website as it is referred to in the Complaint and is central to Plaintiff's allegations. *Ashland, Inc.*, 648 F.3d at 467 ("[The Court] may also consider other materials that are integral to the complaint . . . or are otherwise appropriate for the taking of judicial notice.").

age of Fortnite Players—to argue that Defendants were marketing PRIME Energy particularly to children. (*Id.* ¶¶ 3-5, 49-50.) Of course, the website Plaintiff relies upon to support the assertion that "[t]he average age of Fortnite players is under 20 years old"—a website which does not link to its sources and has no evidence of reliability—also states that "[a]nother study found that over 62% of Fortnite players are in the age range of 18 to 24." *See* https://whattheboxgame.com/what-is-the-average-age-of-fortnite-players-2020/ (last visited Nov. 1, 2023).

Plaintiff asserts that she "[relies] on Defendants to not omit material facts, including the serious health concern of including 200 milligrams of caffeine in PRIME Energy." (*Id.* ¶ 53.) It appears that the supposed non-disclosure of the caffeine content of PRIME Energy—which is, in fact, disclosed—is the core "deceptive representation[] or omission[]" that Plaintiff alleges. (*Id.* ¶¶ 53-56.) Indeed, TK asserts that she "would not have purchased PRIME Energy for [her son] had [she] been made aware of the health concerns and risks associated with consuming PRIME Energy given the heightened caffeine levels."  (*Id.* ¶ 56.)

### B.      The PRIME Energy Label

As previously noted, each can of the PRIME Energy discloses that it contains "200 mg CAFFEINE" "alongside an invigorating lightning bolt on . . . colorful packing." (*Id.* ¶ 47.) TK acknowledges her considerable focus on the can, offering extensive detail regarding the can design in the Complaint, arguing that "Defendants' marketing and packaging caters to youth with its bright colors and hyped range of flavors." (*Id.* ¶ 2)—which presumes that those over 18 are somehow indifferent to bright colors and a variety of flavors. It is odd, however, that despite TK's obvious focus on the can, in a Complaint alleging fraud by omission, that Plaintiff would omit a key detail of the can:  a warning that directs consumers to "DRINK RESPONSIBLY NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE, PEOPLE SENSITIVE TO CAFFEINE, PREGNANT WOMEN OR WOMEN WHO ARE NURSING."  (*See* Exhibit A.)

5

## III.    LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, a court must determine if the challenged pleading fails to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *L. C. v. United States*, 83 F.4th 534, 550 (6th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). And, of course, "'[A] legal conclusion couched as a factual allegation' is not entitled to a presumption of truth." *Crawford*, 15 F.4th at 762 (quoting *Iqbal*, 556 U.S. at 678).

"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Instead, "[t]he complaint must address all material elements of the plaintiff's chosen legal theory." *Pension Benefit Guar. Corp. v. Findlay Indus., Inc., et al.*, 902 F.3d 597, 605 (6th Cir. 2018) (citing *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 511 (6th Cir. 2014)). And the Court can "draw upon [its] 'judicial experience and common sense' to decide whether the claims are 'plausible.'" *Crawford*, 15 F.4th at 762 (quoting *Iqbal*, 556 U.S. at 679).

When pleading a fraud claim, Plaintiff's claims "must satisfy the heightened pleading standard in Federal Rule of Civil Procedure 9(b)." *Bennett v. Bank of Am., N.A.*, 126 F. Supp. 3d 871, 887 (E.D. Ky. 2015) (citing *Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001)). "This means that 'the circumstances constituting fraud ... shall be stated with particularity.'" *Id.* (quoting

*Bovee v. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 361 (6th Cir. 2001)).  That means that "a plaintiff's complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Teamsters Local 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.,* 83 F.4th 514, 524–25 (6th Cir. 2023) (quoting *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.,* 29 F.4th 802, 810 (6th Cir. 2022)).[4]

## IV.    ARGUMENT

Each of Plaintiff's claims fail for several reasons, but at its core, Plaintiff's Complaint fails because Defendants clearly disclosed the amount of caffeine in the PRIME Energy beverages and clearly warned consumers that the PRIME Energy beverages were "NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE."  Given this disclosure, Plaintiff cannot allege: a material misrepresentation or omission, that she was damaged, or that any damages were caused by Defendants' actions.

### A.    Plaintiff Fails to Allege a Misrepresentation or Omission

This action is based on the assertion that PRIME Energy beverages are "falsely labeled and advertised" and that TK "would not have purchased PRIME Energy for [her] child[] had [she] been made aware of the health concerns and risks associated with consuming PRIME Energy given the heightened caffeine levels that Defendants ignored in their marketing of the product."  (Compl. ¶¶ 1, 56.)  Plaintiff goes on to assert that "Defendants made material omissions and misstatements . . . at the time Plaintiff . . . purchased the products", including "omissions on the product's

---

[4] And in the context of "a fraudulent omission claim, a plaintiff must plead: (1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [the fraudfeasor(s)] obtained as a consequence of the alleged fraud."  *Simpson v. Champion Petfoods USA, Inc.,* 397 F. Supp. 3d 952, 970 (E.D. Ky. 2019) (quoting *RQSI Global Asset Allocation Master Fund, Ltd. v. Aperçu Int'l PR LLC,* 683 F. App'x 497, 505 (6th Cir. 2017)) (internal quotations omitted) (alterations in original).

packaging." (Compl. ¶¶ 67-68.) These allegations lie at the heart of each of Plaintiff's fraud-based claims including Count I (violation of the California Consumers Legal Remedies Act ("CLRA")), Count II (violation of California False Advertising Law ("FAL")), Count III (violation of the UCL), Count IV (violation of the KCPA), and Count V (common law fraud).

Each of Plaintiff's "claims under the UCL, FAL, and CLRA are governed by the 'reasonable consumer' standard." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). Plaintiff, therefore, is required to "show that members of the public are likely to be deceived." *Id.* (quoting *Williams*, 552 F.3d at 938). The UCL, FAL, and CLRA all "prohibit explicitly false advertising and advertising that is 'either actually misleading[,] or which has a capacity, likelihood[,] or tendency to deceive or confuse the public.'" *Id.* (quoting *Williams*, 552 F.3d at 938). That is to say, Plaintiff must allege "more than a mere possibility that the label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Id.* (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)).

Plaintiff's KCPA claim, similarly, "makes 'unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce' unlawful." *Maynard v. Am. Med. & Life Ins. Co.*, 4:10-CV-00157-JHM, 2012 WL 2571160, at *3 (W.D. Ky. July 2, 2012) (quoting KRS § 367.170(1)). And, as with the UCL, FAL, and CLRA, the terms "'false, misleading, and deceptive' are given their ordinary meaning as understood by a reasonably prudent person of common intelligence." *Noble v. Time Ins. Co.*, CIV. 11-345-GFVT, 2013 WL 1964819, at *4 (E.D. Ky. May 10, 2013) (quoting *Maynard,* 2012 WL 2571160, at *3). Likewise, common law fraud incorporates a reasonable person standard as one of the core elements is "that the plaintiff reasonably relied upon the misrepresentation." *Republic Bank & Tr. Co. v. Bear, Stearns & Co.,*

*Inc.*, 707 F. Supp. 2d 702, 708 (W.D. Ky. 2010) (citing *Flegles, Inc. v. TruServ Corp.,* 289 S.W.3d 544, 549 (Ky. 2009)), *aff'd,* 683 F.3d 239 (6th Cir. 2012).   In this case, Plaintiff's unjust enrichment claim is based in fraud and therefore includes all of the same requirements.  *See Pixler v. Huff*, 3:11-CV-00207-JHM, 2011 WL 5597327, at *14 (W.D. Ky. Nov. 17, 2011).

Moreover, under Rule 9(b) each of these claims must be plead with particularity.  In the case of an affirmative misrepresentation, Plaintiff "must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Teamsters Local 237*, 83 F.4th at 524–25.  And in the context of "a fraudulent omission claim, a plaintiff must plead: (1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [the fraudfeasor(s)] obtained as a consequence of the alleged fraud."  *Simpson*, 397 F. Supp. 3d at 970 (internal quotations omitted) (alterations in original).[5]

Plaintiff's factual allegations demonstrate that they have not alleged *any* misrepresentations or omissions.  Instead, Plaintiff alleges that PRIME Energy beverages contain 200 milligrams of caffeine and that this caffeine content is a health concern in children under the age of 18.  (Compl. ¶¶ 2, 10, 39-42.)  Plaintiff alleges that the packaging has "bright colors" and the PRIME Energy beverages come in a "hyped range of flavors"—but that does not constitute an affirmative representation of anything.  (Compl. ¶ 2.)  Plaintiff further characterizes the packaging arguing that "PRIME Energy's listing of caffeine, alongside an invigorating lightning bolt on its colorful packing itself makes it look healthy, attractive, and appropriate for young consumers

---

[5] Rule 9(b)'s heightened pleading standard also applies to Plaintiff's claim for unjust enrichment as it is based on the same allegations of misrepresentation and omission as the fraud claims. *See Pixler*, 2011 WL 5597327, at *15 (applying Rule 9(b) to a claim for unjust enrichment).

rather than a health and heart hazard."  However, a colorful can and a simple lightning bolt logo next to the caffeine disclosure and warning that the product is not suitable for those under 18—written in plain and clear English—do not constitute any kind of representation regarding "appropriate[ness] for young consumers."  (Compl. ¶ 47.)  Finally, Plaintiff alleges that Defendants advertising reaches a mixed audience of individuals which includes both adults and children.  (Compl. ¶¶ 5, 50.)

None of these allegations—or any of the other allegations in the Complaint—can reasonably be understood to constitute a misrepresentation regarding the appropriateness of 200 milligrams of caffeine for individuals under 18 years of age.  Under Rule 9(b), Plaintiff must "specify the statements that the plaintiff contends were fraudulent" along with the who, what, where, when, and why of the statement.  *Teamsters Local 237*, 83 F.4th at 524–25.  Plaintiff here has failed at the first step—she has not identified a specific statement that she alleges was fraudulent.

Plaintiff's contention that her claims are based on omissions fares no better.  For a fraudulent omission claim, Plaintiff must plead what was omitted and the manner in which the omission was misleading, among other things.  *Simpson*, 397 F. Supp. 3d at 970.  Indeed, a claim of fraud by omission "is grounded in a duty to disclose."  *Id.* (quoting *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011)).  Plaintiff has neither alleged specifically what was omitted nor any facts supporting a duty to disclose.  And contrary to any omission, the PRIME Energy label specifically discloses that the product contains 200 mg of caffeine and warns that consumers should "DRINK RESPONSIBLY NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE, PEOPLE SENSITIVE TO CAFFEINE, PREGNANT WOMEN OR WOMEN WHO ARE NURSING."  (PRIME Energy Label, attached at Exhibit A.)

Under the reasonable consumer standard, Plaintiff is required to show that members of the public are *likely* to be deceived into believing that there is no caffeine in the product and that it is safe for ingestion by those under 18 despite it bearing a product label which discloses that it contains 200 milligrams of caffeine and that it is "not recommended for children under 18 years of age." Plaintiff's fraud claims must each be dismissed as Plaintiff has failed identify any misrepresentations or omissions sufficient to support these claims—let alone pled any such misrepresentations or omissions with the requisite level of particularity under Rule 9(b).

Indeed, the Sixth Circuit has held that, as a matter of law, "[g]eneralized, subjective terms like 'quality' and 'reliability' are plainly self-serving opinions, puffery on which no buyer would reasonably rely." *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 564 (6th Cir. 2013). The few direct representations that Plaintiff identifies include only broad, self-serving opinion statements such as that Prime Energy "provides the boost you need for any endeavor." (Compl. ¶ 6.) This is clear puffery. It provides no objective, measurable representation. For this additional reason, Plaintiff's fraud claims, Counts I-V, must be dismissed.

Finally, Plaintiff has failed to allege any representation by either Prime LLC or Congo Brands. (*See* Compl. generally.) Instead, Plaintiff improperly lumps Defendants together in pleading the alleged misrepresentations and omissions. Rule 9(b), however, requires that when a complaint involves multiple defendants, "each defendant's role must be particularized with respect to their alleged involvement in the fraud." *GMAC Mortgage, LLC v. McKeever*, CIV.A. 08-459-JBC, 2010 WL 3470312, at *2 (E.D. Ky. Aug. 31, 2010) (quoting *Coffey v. Foamex, L.P.,* 2 F.3d 157, 161–62 (6th Cir .1993)). Claims are properly dismissed under Rule 9(b) where Plaintiff fails to "plead more than a generalized grievance against a collective group of Defendants." *Masterson v. Meade Cnty. Fiscal Court*, 489 F. Supp. 2d 740, 749 (W.D. Ky. 2007). Because Plaintiff simply

lumps Prime LLC and Congo Brands together, Plaintiff has failed to adequately allege a claim against either and the fraud claims must be dismissed for this additional reason.

### B.     Plaintiff Fails to Allege Any Actionable Damages

*1.     Plaintiff's claims brought "as Legal Guardian of John Doe" fail because Plaintiff's claimed damages are exclusively tied to the purchase of the product.*

As outlined in the Complaint, it was Plaintiff TK[6] who purchased the PRIME Energy drinks that were consumed by her son, John Doe. (Compl. ¶¶ 15, 17.) Although Plaintiff's Complaint makes vague references to John Doe's mood swings and sleep issues being allegedly caused by drinking a PRIME Energy drink (which reverted when he stopped consuming the energy drinks) (Compl. ¶¶ 21, 22), none of Plaintiff's legal claims, in fact, are premised on any alleged damages to John Doe. Instead, each of Plaintiff's damage claims are premised exclusively on claims for economic damages arising out of the purchase of these products. To the extent any actionable damages exist (which, as explained below, they do not) for any of Plaintiff's claims for consumer fraud (be it under the CLRA, FAL, UCL, KCPA, or common law fraud), unjust enrichment or public nuisance, those damages are exclusively economic in nature and tied to TK's purchase of the product. Having failed to plead any claims on behalf of John Doe, Plaintiff's claims as "legal guardian of John Doe" should be dismissed.

*2.     Plaintiff's claims brought on her own behalf fail because she suffered no ascertainable loss.*

Plaintiff's claims are all based on her damage allegation that she "paid a premium, or otherwise paid more for Defendants' hazardous product when she otherwise would not have, absent Defendants' omissions and misstatements." (Compl. ¶¶ 20, 72.) This is the only injury

---

[6] Plaintiff's Complaint provides no cause for why Plaintiff TK's identity should be sealed. Defendants Prime Hydration and Congo Brands, therefore, intend to file a motion to unseal Plaintiff TK's identity in this matter.

alleged in the Complaint. It is notable, then, that TK got precisely what she paid for: an energy drink which specifically discloses that it contains 200 milligrams of caffeine and warns that consumers should "DRINK RESPONSIBLY NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE, PEOPLE SENSITIVE TO CAFFEINE, PREGNANT WOMEN OR WOMEN WHO ARE NURSING." (PRIME Energy Label, attached at Exhibit A.)

It is axiomatic that Plaintiff must show damages for each claim. As but one example, the KCPA "provides a private remedy to a purchaser who 'suffers any ascertainable loss of money or property as a result of a violation of [KRS] 367.170.'" *Cole v. Mariner Fin., LLC*, 2023 WL 3570012, at *3 (W.D. Ky. May 19, 2023) (quoting *Ky. Laborers Dist. Council Health & Welfare Tr. Fund v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 772 (W.D. Ky. 1998)). In this case, however, the damages claim underlying *each* of Plaintiff's theories is that Plaintiff received something other than what was represented when purchasing PRIME Energy beverages. Because Plaintiff has not alleged that they received something other than an energy drink containing 200 milligrams of caffeine and that was "NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE", they have failed to allege any damages and, as a result, the Complaint must be dismissed in its entirety.

### C.    Plaintiff Fails to Allege Damage Causation

Along the same lines, each of Plaintiff's claims requires damage causation—a causal link between Defendants' actions and Plaintiff's damages. "The plain meaning of the KCPA damages provision requires [ ] a showing of a causal nexus between the plaintiff's loss and the defendant's allegedly deceitful practice ...." *Cole*, 2023 WL 3570012, at *3 (W.D. Ky. May 19, 2023) (quoting *M.T. v. Saum*, 7 F. Supp. 3d 701, 706 (W.D. Ky. 2014)). The CLRA, similarly, requires "[a] causal link between the deceptive practice and damage to the plaintiff is a necessary element of a CLRA cause of action." *Torres v. Adventist Health Sys./W.*, 77 Cal. App. 5th 500, 513, 292 Cal. Rptr. 3d

557, 567 (2022), *review denied* (July 27, 2022). To plead a claim under the UCL or FAL, Plaintiff must "have lost money or property as a result of the unfair competition." *In re Outlaw Lab., LLP*, 463 F. Supp. 3d 1068, 1085 (S.D. Cal. 2020) (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013)). That is to say, she must plead "a causal connection or reliance on the alleged misrepresentation." *Id.* (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011)). Similarly, a claim for common law fraud requires, as an element, "that the misrepresentation caused injury to the plaintiff." *Republic Bank & Tr.*, 707 F. Supp. 2d at 708.

In this case, Plaintiff has not identified—and cannot possibly identify—a misrepresentation or omission; she has been unable to allege any damages; and, has not alleged what representations in particular she reviewed or relied on. Without any of those underlying allegations, it is impossible for Plaintiff to allege that she suffered damages that were caused by any misrepresentation or omission. For this reason, Plaintiff's fraud claims all fail and should be dismissed.

### D.     Plaintiff's UCL Claims Fail as Plaintiff does not Allege Facts Showing that Legal Remedies are Inadequate to Correct Past Harms

Plaintiff's UCL claims (Count III) are purely equitable. *See Fonseca v. Goya Foods, Inc.*, 2016 WL 4698942, at *7-8 (N.D. Cal. Sept. 8, 2016). As the Ninth Circuit held in *Sonner v. Premier Nutrition Corp.*, when, as here, plaintiff does not allege facts showing that legal remedies are inadequate to correct past harms, claims for equitable relief under the UCL should be dismissed. 971 F.3d 834, 844 (9th Cir. 2020). Many courts have held that *Sonner* applies at the pleading stage.[7] The reasoning in *Sonner* applies with particular force here because Plaintiff

---

[7] *See, e.g.*, *Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990, at *3 (C.D. Cal. Sep. 9, 2020) (dismissing equitable claims at the pleading stage following *Sonner*); *Schertz v. Ford Motor Co.*, 2020 WL 5919731, at *2 (C.D. Cal. July 27, 2020) (same).

alleges, and hence admits, that money damages can address the alleged injury. (Compl. ¶ 117.) Indeed, courts have regularly held that where a plaintiff seeks damages "the availability of an adequate legal remedy [wa]s clear from the face of the [complaint]." *Hamm v. Mercedes-Benz USA, LLC*, 2022 WL 913192, at *1-3 (N.D. Cal. Mar. 29, 2022); *see also Brand v. Nissan N. Am.*, 2017 WL 11610900, at *3-5 (C.D. Cal. May 16, 2017) (similar).

For this additional reason, Plaintiff's UCL claim should be dismissed with prejudice.

### E.      Plaintiff Fails to Allege She Was in Privity with Defendants

There is no allegation in the Complaint that Plaintiff purchased PRIME Energy directly from any of the Defendants. Instead, Plaintiff alleged that she purchased her products at "major and local grocery stores, including Walmart, CVS, and Target." (Compl. ¶ 44.) A claim under the KCPA, however, requires that Plaintiff is in privity with Defendants:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170, may bring an action under the Rules of Civil Procedure in the Circuit Court in which the seller or lessor resides or has his principal place of business or is doing business, or in the Circuit Court in which the purchaser or lessee of goods or services resides, or where the transaction in question occurred, to recover actual damages.

KRS § 367.220(1). "The Kentucky Supreme Court has construed this provision to mean that an individual must be a purchaser with privity of contract in order to have standing to bring an action under the Act." *Williams v. Chase Bank USA, N.A.*, 390 S.W.3d 824, 829 (Ky. Ct. App. 2012), *review denied* (Feb. 13, 2013). Similarly, "[t]he Sixth Circuit and the majority of the federal district courts have [held] that privity is required under the KCPA." *Simpson*, 397 F. Supp. 3d at 963 n. 10 (E.D. Ky. 2019); *see also Helton v. Am. Gen. Life Ins. Co.*, 946 F. Supp. 2d 695, 702 (W.D. Ky. 2013) (Kentucky courts have interpreted the Kentucky Consumer Protection Act to

"contemplate an action by a purchaser against [the] immediate seller," and "that privity of contract exist between the parties in a suit alleging a violation of the Consumer Protection Act.").

Because there is no privity between Plaintiff and Defendants, Plaintiff's KCPA claim necessarily fails and should be dismissed with prejudice.

### F.      Plaintiff's Unjust Enrichment Claim Fails as Plaintiff Did Not Directly Confer a Benefit on Defendants

"In Kentucky, to sustain a claim for unjust enrichment a plaintiff must establish three elements: '(1) [a] benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of that benefit without payment for its value.'" *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 973 (E.D. Ky. 2019) (quoting *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 778 (Ky. 2017)). "Kentucky courts have consistently found that the first element not only requires a benefit be conferred upon the defendant, but also that the plaintiff be the party conferring that benefit." *Id.* (quoting *Pixler v. Huff*, No. 3:11-CV-00207-JHM, 2011 WL 5597327, at *11 (W.D. Ky. Nov. 17, 2011)). That is to say, under Kentucky law, "the plaintiff 'must show that he conferred a benefit directly upon [defendants].'" *Id.* (quoting *Lewis v. Jones*, No. 6:17-CV-38, 2018 WL 5043773, at *5 (E.D. Ky. Oct. 17, 2018)) (alterations in original).

Plaintiff alleges that she "purchased their products at major and local grocery stores, including Walmart, CVS, and Target." (Compl. ¶ 44.) In this case, as in *Simpson*, "Plaintiff[] did not directly confer a benefit on [Defendants]." *Simpson*, 397 F. Supp. 3d at 974. The *Simpson* court held that, as a matter of law, "[t]he fact that '[Champion] charged [premium] prices for [dog food]; retailers then passed the cost to customers; customers paid these prices; and [Champion] profited' is simply 'insufficient to plead unjust enrichment.'" *Id.* (quoting *Commonwealth of Kentucky v. Marathon Petroleum Co., LP*, 191 F. Supp. 3d 694, 706 (W.D. Ky. 2016)). The same

holds true here, the fact that Plaintiff supposedly paid premium prices when purchased PRIME Energy from retailers is insufficient to plead unjust enrichment. Any other outcome "would overextend the equitable doctrine and allow every unsatisfied consumer to sue a manufacturer when they feel the value of their purchase is somehow diminished." *Id.* Such an outcome would be "contrary to the general purpose of an unjust enrichment claim, which exists to compensate for benefits conferred, not loss suffered." *Id.* (collecting cases).

### G.     Public Nuisance Does Not Apply to the Lawful Sale of Products That Do Not Affect a Public Right

Plaintiff next attempts to expand public nuisance law in Kentucky by seeking to assert a public nuisance claim to the sale of lawful products. Although not entirely clear from the Complaint, Plaintiff appears to allege a "public health crisis" of children consuming Prime Energy drinks containing caffeine. In addition to the absence of any facts showing there is any such public health crisis, such a claim is not only inconsistent with Kentucky law on public nuisance, but (as outlined below) courts throughout the country have been wary of extending public nuisance law to the sale of lawful products for several reasons, including that such allegations do not involve interference with a "public right," and the alleged injuries are limited to those individuals who were directly exposed to the product, as opposed to the general public. Plaintiff's claims suffer from exactly the same problems.

Under Kentucky law, a nuisance is "a class of wrongs that 'arises from the unreasonable, unwarranted, or unlawful use by a person of his own property and produces such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage.'" *Smith v. Carbide & Chems. Corp.,* 507 F.3d 372, 379 (6th Cir. 2007) (quoting *City of Somerset v. Sears,* 313 Ky. 784, 233 S.W.2d 530, 532 (Ky. 1950)) (internal quotations omitted). There are

two types of nuisance:  private and public.  *W.G. Duncan Coal Co. v. Jones,* 254 S.W.2d 720, 723 (Ky. 1953).

A public nuisance is a condition that is prejudicial to the health, comfort, safety, property, sense of decency, or morals of the citizens at large, resulting either from an act not warranted by law or from neglect of a duty imposed by law. *Nuchols v. Commonwealth,* 312 Ky. 171, 226 S.W.2d 796, 798 (Ky. 1950).  Unlike private nuisance, which is concerned with the invasion of an individual's right to use and enjoy her land, public nuisance is concerned with the invasion of rights common to the public.  *Regional Airport Authority of Louisville and Jefferson County v. LG, LLC,* 255 F. Supp. 2d 688, 692 (W.D. Ky. 2003) (citing *Philadelphia Electric v. Hercules, Inc.,* 762 F.2d 303, 315 (3rd Cir. 1985)).  Public nuisances are generally redressed by an action in the name of the governing body, or its authorized representative to restrain or abate the nuisance. *Id.* (*citing* 58 Am Jur 2d *Nuisances* § 246 (2002)).  For a private party to recover for a public nuisance, it must allege and show unusual or special damages, differing from those sustained by the community at large.  *Id.*

In alleging a public nuisance based on the premise that parents could, supposedly unwittingly, purchase Prime Energy drinks for their children and that their children could thereby suffer harm from drinking Prime Energy drinks containing caffeine, Plaintiff fails to meet any criteria for a public nuisance claim.  Plaintiff has not alleged a condition prejudicial to the health, comfort, safety, property, sense of decency, or morals of the citizens at large resulting either from an act not warranted by law or neglect of a duty imposed by law.  Rather, Plaintiff impermissibly seeks to transform their claims, which are based solely on alleged harm to a select group of people (minor children who drink Prime Energy drinks), to a violation of a public right.

Courts have consistently rejected efforts to expand public nuisance law to the sale of lawful products. *See In re Paraquat Prods. Liability Litig.*, 2022 WL 451898 (S.D. Ill. Feb. 14, 2022) (refusing to extend public nuisance to the sale of herbicide products); *In re Lead Paint Litig.*, 924 A.2d 484, 505 (N.J. 2007) (to allow nuisance suits for the sale and distribution of a product would "supplant an ordinary product liability claim with a separate cause of action as to which there are apparently no bounds"); *Tioga Pub. Sch. Dist. #15 v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993) (refusing to "extend[] the application of the nuisance statute to situations where one party has sold to the other a product that later is alleged to constitute a nuisance," noting that "North Dakota cases applying the state's nuisance statute all appear to arise in the classic context of a landowner or other person in control of property conducting an activity on his land in such a manner as to interfere with the property rights of a neighbor").  This is true even in cases where it is a governmental entity (as opposed to a private plaintiff) that is attempting to enforce public nuisance on behalf of the public (as opposed to a select group of individuals).  *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 721, 726 (Okla. 2021) (applying standard common-law principles to hold that "public nuisance law does not extend to the manufacturing, marketing, and selling of prescription opioids"); *City of Huntington v. AmerisourceBergen Drug Corp., et al.*, 2022 WL 2399876, at *56–59 (S.D. W. Va. July 4, 2022) (same); *People v. Purdue Pharma L.P.*, 2021 WL 7186146, at *3–11 (Cal. Super. Ct. Dec. 14, 2021) (same); *S.D. ex rel. Ravnsborg v. Purdue*, 2021 WL 5636563 (S.D. Cir. Ct. Jan. 13, 2021) (prescription opioids); *State ex rel. Jennings v. Purdue*, 2019 WL 446382, at *1, 11-13 (Del. Super. Ct. Feb. 4, 2019) (prescription opioids); *N.D. ex rel. Stenehjem v. Purdue*, 2019 WL 2245743 (N.D. Dist. Ct. May 10, 2019) (same).

As one state supreme court recently put it, "[e]xtending public nuisance law to the manufacturing, marketing, and selling of . . . opioids . . . would allow consumers to convert almost every products liability action into a public nuisance claim."  *Hunter*, 499 P.3d at 729–30 (alteration omitted).  "Nuisance thus would become a monster that would devour in one gulp the entire law of tort."  *Stenehjem*, 2019 WL 2245743, at *13.

Plaintiff makes no effort to allege facts supporting a condition that is prejudicial to the health, comfort, safety, property, sense of decency, or morals of the citizens at large, resulting either from an act not warranted by law or from neglect of a duty imposed by law, nor an invasion of rights that are common to the public.  At most, Plaintiff's claim (even if feasible under Kentucky law in the first place) would apply to a very limited set of individuals—minors who have purchased and consumed a Prime Energy drink—as opposed to any invasion of rights "common to the public."  As such, Plaintiff's public nuisance claim should be dismissed.

### H.    No Injunctive Relief Is Available

Plaintiff lacks standing to assert a claim for injunctive relief.  The Sixth Circuit has been unequivocal that "an imminent future injury must exist to obtain the types of forward-looking equitable remedies [Plaintiffs] seek here."  *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1017 (6th Cir. 2022).  Indeed, "plaintiffs seeking the forward-looking remedy of an injunction must establish a likelihood that defendants will continue to violate their rights *in the future*."  *Reform Am. v. City of Detroit, Michigan*, 37 F.4th 1138, 1148 (6th Cir. 2022), *cert. denied,* 143 S. Ct. 448, 214 L. Ed. 2d 255 (2022) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (*emphasis in original*); *see also Davis v. Colerain Twp., Ohio*, 51 F.4th 164, 171 (6th Cir. 2022) ("A previously harmed plaintiff may not seek a forward-looking remedy (an injunction to restrain the defendant's future conduct) without evidence that the harmful conduct will reoccur.").

In this case, Plaintiff alleges that TK bought PRIME Energy for TK's Son on multiple occasions in March of 2023." (Compl. ¶ 16.) TK "researched PRIME Energy due to [her son's] sudden mood swings and sleep issues, learning that PRIME Energy drinks were harmful to her minor child." (*Id.* ¶ 17.) TK alleges that knowing "about PRIME Energy's ill-effects" she "would never have purchased PRIME Energy. (*Id.* ¶ 18.) Thus, Plaintiff has clearly alleged that now that she knows that PRIME Energy contains 200 milligrams of caffeine and is "NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE"—as the label clearly discloses—she will not purchase PRIME Energy again. Given that there is no risk that TK will purchase PRIME Energy for her minor son in the future, Plaintiff cannot allege any risk of a future injury—let alone an imminent future injury. Without such an allegation, Plaintiff's claims for injunctive relief necessarily fail and should be dismissed with prejudice.

## V.    CONCLUSION

Plaintiff ignored the label of the PRIME Energy beverages they purchased. Had she reviewed the labels as any reasonable consumer would, she would have seen that each can of PRIME Energy contained "200mg CAFFEINE" and cautioned consumers to "DRINK RESPONSIBLY" as PRIME Energy—and all energy drinks—are "NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE." (PRIME Energy Label, attached at Exhibit A.) Despite these clear warnings, Plaintiff TK purchased PRIME Energy and served it to her son repeatedly. Now, she seeks to hold Defendants liable for her decision to ignore the warning label. For all of the reasons addressed herein, Plaintiff's Complaint should be dismissed.

Respectfully submitted,

*/s/Jason P. Renzelmann*
D. Christopher Robinson
Jason P. Renzelmann
FROST BROWN TODD LLP
400 W. Market St., 32nd Floor
Louisville, KY 40202
(502) 589-5400
crobinson@fbtlaw.com
jrenzelmann@fbtlaw.com
*Counsel for Defendants Prime Hydration*
*LLC and Congo Brands LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2023, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Edward W. Ciolko
Jennifer Sarah Czeisler
Sterlington PLLC
One World Trade Center, 85th Floor
85th Floor
New York, NY 10007
(610)-306-4413
edward.ciolko@sterlingtonlaw.com
jen.czeisler@sterlingtonlaw.com

J. Chris Sanders
Bahe Cook Cantley & Nefzger PLC
1041 Goss Avenue
Louisville, KY 40217
(502) 587-2002
csanders@chrissanderslaw.com

James M. Evangelista
Evangelista Worley LLC
500 Sugar Mill Road, Suite 245A
Atlanta, GA 30350
(404) 205-8400
jme@ewlawllc.com

*Counsel for Plaintiff*

*/s/ Jason P. Renzelmann*
*Counsel for Defendants Prime Hydration*
*LLC and Congo Brands LLC*

0149492.0777393   4871-6763-2272