**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

*Filed Electronically*

| | | |
|---|---|---|
| TURKOISE KENNEDY, individually and in her capacity as parent and legal guardian of JOHN DOE I; JAMAL HARPER individually and in his capacity as parent and legal guardian of JOHN DOE II; on behalf of themselves and all others similarly situated | ) ) ) ) ) ) | Civil Action No. 3:23-cv-00476-GNS |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| PRIME HYDRATION LLC, CONGO BRANDS LLC, LOGAN PAUL and OLAJIDE OKAYINKA WILLIAMS OLATUNJI | ) ) ) ) | |
| Defendants. | ) | |

---

**DEFENDANTS PRIME HYDRATION LLC AND CONGO BRANDS LLC'S**
**MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

---

## I.      INTRODUCTION

In this case, Plaintiffs Turkoise Kennedy ("Kennedy") and Jamal Harper ("Harper", and collectively, "Plaintiffs") and their sons, ignored the label of the cans of PRIME Energy beverages they bought which clearly and unequivocally disclosed that each can of PRIME Energy contained "200mg CAFFEINE" and cautioned that PRIME Energy is "NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE, PEOPLE SENSITIVE TO CAFFEINE, PREGNANT

1

WOMEN OR WOMEN WHO ARE NURSING." (ECF 26, First Amended Complaint ("First Amended Complaint" or "FAC") ¶ 8; PRIME Energy Label, attached at Exhibit A.)[1]



Despite these clear warnings—both of the amount of caffeine in PRIME Energy and that they should not be consumed by children—Plaintiffs seek to hold Defendants Prime Hydration LLC ("Prime LLC") and Congo Brands LLC ("Congo Brands", and collectively "Organizational Defendants") liable for their choice to ignore the express label representations (and further, for separate, independent, and individual purchase decisions made by a supposed class of plaintiffs).[2]

---

[1] On a motion to dismiss, "[i]n addition to the allegations in the complaint, [the Court] may also consider other materials that are integral to the complaint . . . or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) (quoting *Ley v. Visteon Corp.*, 543 F.3d 801, 805 (6th Cir. 2008)). In this case, the Court can take judicial notice of the contents of the PRIME Energy label as it is referred to in the Complaint and is central to Plaintiffs' allegations. The quoted label warning is visible on the can of PRIME Energy pictured on page 15 of the Complaint. (FAC ¶ 58.) The "hyped-up" or "chic lightning bolt" with the disclosure of the amount of caffeine is referenced twice in the Complaint. (FAC ¶¶ 7, 59.)

[2] Plaintiffs also asserts claims against non-served Defendants, Logan Paul and KSI (collectively, the "Individual Defendants").

Plaintiffs bring this action asserting that the PRIME Energy beverages are "falsely labeled and advertised" and that Plaintiffs "would not have purchased PRIME Energy for their children had they been made adequately aware of the product's very high levels of caffine [*sic*] -- relative to other beverages -- and the associated health concern and heightened risks to children consuming PRIME Energy given its excessively elevated caffeine levels, which Defendants ignored and/or underplayed in their marketing of the Product." (FAC ¶¶ 1, 72.) Plaintiffs even allege that "Defendants made material omissions and misstatements . . . at the time Plaintiffs . . . purchased the products," including "omissions on the product's packaging." (FAC ¶¶ 90-91.) Plaintiffs' claims fail, at a fundamental level, given that the PRIME Energy beverage labels disclose precisely what Plaintiffs assert they omit or misstate: the caffeine content of the beverages and that the drinks are "NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE."

Plaintiffs' claims each fail for additional reasons. Plaintiffs' fraud claims[3] each fail as they: (1) fail to allege a material omission or misrepresentation with sufficient particularity under Federal Rule of Civil Procedure 9(b); (2) fail to allege damages; and (3) fail to allege that any damages were caused by a misrepresentation made to Plaintiffs or that Plaintiffs viewed. Plaintiffs' claim for a violation of the UCL also fails because UCL claims are purely equitable and when, as here, Plaintiffs do not allege facts showing that legal remedies are inadequate to correct past harms, claims for equitable relief under the UCL should be dismissed. Plaintiffs' claim for a violation of the KCPA fails because Plaintiffs are not in privity with Organizational Defendants, as is required to maintain an action under the KCPA. Plaintiffs' claim for negligent misrepresentation fails because, under Kentucky law, negligent misrepresentation is only a viable claim against a

---

[3] Plaintiffs' fraud claims include: Count I (violation of the California Consumers Legal Remedies Act ("CLRA")), Count II (violation of California False Advertising Law ("FAL")), Count III (violation of the California Unfair Competition Law ("UCL")), Count IV (violation of the Kentucky Consumer Protection Act ("KCPA")), Count V (negligent misrepresentation), and Count VI (fraudulent misrepresentation).

defendant who is in the business of supplying information—not a manufacturer. Because Plaintiffs' claim for unjust enrichment is based on fraud, it is also subject to the pleading requirements embodied in Rule 9(b)—and because unjust enrichment claims are equitable, it fails as Plaintiffs have failed to allege facts showing that legal remedies are inadequate to correct past harms. Finally, Plaintiffs' claim for public nuisance fails because: (1) public nuisance law does not apply to the sale of lawful products; and (2) Plaintiffs' alleged nuisance does not affect the public at large—as is necessary to support a claim of public nuisance.

## II.      BACKGROUND FACTS[4]

Plaintiffs assert that this is a case about a product which was "falsely labeled and advertised," yet they identify no label representation or advertisement that is false. (FAC ¶ 1.) "Defendants manufacture, distribute, advertise, and sell various flavors of the [PRIME Energy beverages], each of which contains 200 milligrams of caffeine." (*Id.* ¶ 2.) Plaintiffs argue that "Prime Energy's youth-orientated marketing campaign appeals to 'Gen Z' and even 'Gen Alpha' consumers with fun photographs, colorful packaging, sweet flavors, and sports arena advertising, including numerous commercials and marketing stunts and ploys that cater to a youthful audience." (*Id.* ¶ 4.)

Plaintiffs further allege that Organizational Defendants' marketing efforts focus on "the positive 'health-conscious' benefits of PRIME Energy it offers to consumers (including zero sugar, inclusion of electrolytes and that the Product is Vegan) and the young, unsuspecting consumers really believe that the Product is, in fact, a health hydration drink." (*Id.* ¶ 9.) But, as Plaintiffs allege, "caffeine and other stimulant substances continued [*sic*] in energy drinks have no place in the diet of children and adolescents." (*Id.* ¶¶ 49-52.) Plaintiffs also include an entirely irrelevant

---

[4] Consistent with Rule 12(b)(6), these allegations are taken as true only for this Motion. *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021).

discussion of "[p]ure and highly concentrated caffeine products" which contain "thousands of servings per container." (*Id.* ¶ 53.) Notably, the discussion Plaintiffs cite to relates to unrelated products where "[j]ust one teaspoon of pure powdered caffeine can contain the same amount of caffeine as 28 cups of coffee, and a half cup of a liquid highly concentrated caffeine product contains the equivalent of more than 20 cups of coffee." *See Spilling the Beans: How Much Caffeine is Too Much?*, U.S. Food & Drug Admin. (Sept. 7, 2023), https://www.fda.gov/consumers/consumer-updates/spilling-beans-how-much-caffeine-too-much (last visited Feb. 21, 2024).

Plaintiffs characterize Organizational Defendants as "hav[ing] placed their desire for profits before consumer safety by failing to warn consumers about health risks." (*Id.* ¶ 57.) Plaintiffs further characterize Organizational Defendants as "burying" the warning that PRIME Energy is not recommended for children under the age of 18 by pointing to the FAQ on the website.[5] (*Id.* ¶ 58.) Plaintiffs admit that the label discloses the specific caffeine content and includes a warning that PRIME Energy is "NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE." (*Id.* ¶¶ 58-59.) Plaintiffs' prior complaint noted that the caffeine content was prominently disclosed "alongside an invigorating lightning bolt." (ECF 1, Class Action Complaint, ¶ 47.) Now, Plaintiffs misleadingly suggest that the only "notation of [PRIME Energy's] caffeine content" is "below its tree nut allergin [*sic*] statement on the back of the can." (FAC ¶ 59.) Indeed, Plaintiffs deleted images contained in their original complaint which showed that the caffeine content of PRIME Energy is prominently disclosed at the top of the can between

---

[5] Plaintiffs neglect to point out that the landing page for each of the PRIME Energy flavors specifically states that it is "[f]or ages 18+." *See, e.g.*, https://drinkprime.com/products/original-energy (last visited Feb. 21, 2024). The Court can take judicial notice of the contents of the PRIME Energy website as it is referred to in the Complaint and is central to Plaintiffs' allegations. *Ashland, Inc.*, 648 F.3d at 467 ("[The Court] may also consider other materials that are integral to the complaint . . . or are otherwise appropriate for the taking of judicial notice.").

the front label and the Nutrition Facts panel. (ECF 1, ¶¶ 46-47.) Plaintiffs replaced those images with ones that strategically fail to show that disclosure. (FAC ¶¶ 58-59.)

Plaintiffs allege that Individual Defendants—who have not been served—have a large social media following which they leverage "to increase PRIME Energy's visibility and appeal to younger demographics and audiences." (*Id.* ¶¶ 4, 5, 49.) Plaintiffs repeatedly cite the age of the Individual Defendants' social media following—or the age of Fortnite Players—to argue that Defendants were marketing PRIME Energy particularly to children. (*Id.* ¶¶ 3-5, 62-63.) Of course, the website Plaintiffs rely on to support the assertion that "[t]he average age of Fortnite players is under 20 years old"—a website which does not link to its sources and has no evidence of reliability—also states that "[a]nother study found that over 62% of Fortnite players are in the age range of 18 to 24." *See* https://whattheboxgame.com/what-is-the-average-age-of-fortnite-players-2020/ (last visited Feb. 21, 2024).

Kennedy alleges that she "purchased PRIME Energy on multiple occasions in March of 2023." (FAC ¶¶ 15-16.) Kennedy does not allege that she reviewed any advertising or marketing related to PRIME Energy before purchasing it for her son. Kennedy does not even allege that she bothered to read the PRIME Energy label before purchasing PRIME Energy products for her son. Even so, Kennedy alleges that she "paid a premium, or otherwise paid more for [PRIME Energy] when she other [*sic*] would not have, absent Defendants' omissions and misstatements." (*Id.* ¶ 21.) Kennedy does not allege that her son ever bought a PRIME Energy product himself.

Harper alleges that "[t]hroughout July 2023, [he] bought PRIME Energy for his son." (*Id.* ¶¶ 25-26.) Harper alleges that "the 'Ice Pop' flavor made it seem like it was a kid's drink." (*Id.* ¶ 27.) Harper does not allege that he reviewed any advertising or marketing related to PRIME Energy before purchasing it for his son. Harper does not even allege that he bothered to read the

PRIME Energy label before purchasing PRIME Energy products for his son. Even so, Harper alleges that he "paid a premium, or otherwise paid more for [PRIME Energy] when she [*sic*] otherwise would not have, absent Defendants' omissions and misstatements." (*Id.* ¶ 31.) Harper does not allege that his son ever bought a PRIME Energy product himself.

Plaintiffs assert that they "rely on Defendants to not omit material facts, including the serious health concern of including 200 milligrams of caffeine in PRIME Energy." (*Id.* ¶ 66.) It appears that the supposed non-disclosure of the caffeine content of PRIME Energy—which is, in fact, disclosed—is the core "deceptive representation[] and omission[]" that Plaintiffs allege. (*Id.* ¶¶ 70-72.) Indeed, Plaintiffs assert that they "would not have purchased PRIME Energy for their children had they been made adequately aware of the product's very high levels of caffine [*sic*] -- relative to other beverages -- and the associated health concern and heightened risks to children consuming PRIME Energy given its excessively elevated caffeine levels, which Defendants ignored and/or underplayed in their marketing of the product." (*Id.* ¶ 72.)

### III.    LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the challenged pleading fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "'[A] legal conclusion couched as a factual allegation' is not entitled to a presumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *L. C. v. United States*, 83 F.4th 534, 550 (6th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678).

"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Instead, "[t]he complaint must address all material elements of the plaintiff's chosen legal theory." *Pension Benefit Guar. Corp. v. Findlay Indus., Inc., et al.*, 902 F.3d 597, 605 (6th Cir. 2018) (citing *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 511 (6th Cir. 2014)). The Court can "draw upon [its] 'judicial experience and common sense' to decide whether the claims are 'plausible.'" *Crawford*, 15 F.4th at 762 (quoting *Iqbal*, 556 U.S. at 679).

When pleading a fraud claim, Plaintiffs' claims "must satisfy the heightened pleading standard in Federal Rule of Civil Procedure 9(b)." *Bennett v. Bank of Am., N.A.*, 126 F. Supp. 3d 871, 887 (E.D. Ky. 2015) (citing *Minger v. Green,* 239 F.3d 793, 800 (6th Cir. 2001)). "This means that 'the circumstances constituting fraud . . . shall be stated with particularity.'" *Id.* (quoting *Bovee v. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 361 (6th Cir. 2001)). In other words, "a plaintiff's complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Teamsters Local 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 524–25 (6th Cir. 2023) (quoting *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*, 29 F.4th 802, 810 (6th Cir. 2022)).[6]

## IV.    ARGUMENT

Each of Plaintiffs' claims fail for several reasons, but at its core, Plaintiffs' First Amended Complaint fails because Organizational Defendants clearly disclosed the amount of caffeine in

---

[6] And in the context of "a fraudulent omission claim, a plaintiff must plead: (1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [the fraudfeasor(s)] obtained as a consequence of the alleged fraud." *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 970 (E.D. Ky. 2019) (quoting *RQSI Global Asset Allocation Master Fund, Ltd. v. Aperçu Int'l PR LLC*, 683 F. App'x 497, 505 (6th Cir. 2017)) (internal quotations omitted) (alterations in original).

PRIME Energy and warned consumers that PRIME Energy was "NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE." While Plaintiffs may have ignored these disclosures, this Court should not. Given these clear, unequivocal disclosures, Plaintiffs cannot allege: a material misrepresentation or omission, damages, or that any damages were caused by Organizational Defendants' actions.

### A. Plaintiffs Fail to Allege a Misrepresentation or Omission

Plaintiffs brings this action asserting that the PRIME Energy beverages are "falsely labeled and advertised" and that Plaintiffs "would not have purchased PRIME Energy for their children had they been made adequately aware of the product's very high levels of caffine [*sic*] -- relative to other beverages – and the associated health concern and heightened risks to children consuming PRIME Energy given its excessively elevated caffeine levels, which Defendants ignored and/or underplayed in their marketing of the product." (FAC ¶¶ 1, 72.) Plaintiffs also assert that "Defendants made material omissions and misstatements . . . at the time Plaintiffs . . . purchased the products," including "omissions on the product's packaging." (FAC ¶¶ 90-91.) These allegations lie at the heart of each of Plaintiffs' fraud-based claims including Count I (violation of the California Consumers Legal Remedies Act ("CLRA")), Count II (violation of California False Advertising Law ("FAL")), Count III (violation of the UCL), Count IV (violation of the KCPA), Count V (negligent misrepresentation), and Count VI (fraudulent misrepresentation).

Each of Plaintiffs' "claims under the UCL, FAL, and CLRA are governed by the 'reasonable consumer' standard." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). Plaintiffs, therefore, are required to "show that members of the public are likely to be deceived." *Id.* (quoting *Williams*, 552 F.3d at 938). The UCL, FAL, and CLRA all "prohibit explicitly false advertising and advertising that is 'either actually misleading[,] or which has a capacity, likelihood[,] or

tendency to deceive or confuse the public.'" *Id.* (quoting *Williams*, 552 F.3d at 938). That is to say, Plaintiffs must allege "more than a mere possibility that the label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Id.* (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)).

Plaintiffs' KCPA claim, similarly, "makes 'unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce' unlawful." *Maynard v. Am. Med. & Life Ins.*, 4:10-CV-00157-JHM, 2012 WL 2571160, at *3 (W.D. Ky. July 2, 2012) (quoting KRS § 367.170(1)). And, as with the UCL, FAL, and CLRA, the terms "'false, misleading, and deceptive' are given their ordinary meaning as understood by a reasonably prudent person of common intelligence." *Noble v. Time Ins.*, CIV. 11-345-GFVT, 2013 WL 1964819, at *4 (E.D. Ky. May 10, 2013) (quoting *Maynard*, 2012 WL 2571160, at *3).

Plaintiffs' negligent misrepresentation claim requires "an affirmative false statement; a mere omission will not do." *Estate of DeMoss v. Eli Lilly & Co.*, 234 F. Supp. 3d 873, 883 (W.D. Ky. 2017) (quoting *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 746 (Ky. 2011)). In addition, Plaintiffs must plead that they "justifiably relied" on that affirmative misrepresentation and "exercised reasonable care in relying on the information." *Id.* Likewise, fraudulent misrepresentation incorporates a reasonable person standard as one of the core elements is "that the plaintiff reasonably relied" upon the misrepresentation. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 248 (6th Cir. 2012) (citing *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009)). In this case, Plaintiffs' unjust enrichment claim is based in fraud and therefore includes all of the same requirements. *See Pixler v. Huff*, 3:11-CV-00207-JHM, 2011 WL 5597327, at *14 (W.D. Ky. Nov. 17, 2011).

Moreover, under Rule 9(b) each of these claims must be pled with particularity. For an affirmative misrepresentation, Plaintiffs "must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Teamsters Local 237*, 83 F.4th at 524–25. And in the context of "a fraudulent omission claim, a plaintiff must plead: (1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what [the fraudfeasor(s)] obtained as a consequence of the alleged fraud." *Simpson*, 397 F. Supp. 3d at 970 n.16 (internal quotations omitted) (alterations in original).[7]

Plaintiffs do not allege *any* misrepresentations or omissions. Instead, Plaintiffs allege that PRIME Energy beverages contain 200 milligrams of caffeine and that this caffeine content is a health concern in children under the age of 18. (FAC ¶¶ 2, 10, 49-52.) Plaintiffs allege that the packaging has "bright colors" and the PRIME Energy beverages come in a "hyped range of flavors"—but that is not an affirmative representation of anything. (*Id.* ¶ 2.) Plaintiffs further characterize the packaging arguing that "the product's colorful packing and prominent 'Nutrition Facts' . . . make the drink seem healthy, attractive, and appropriate for young consumers." (*Id.* ¶ 59.) But a colorful can and a "chic lightning bolt" logo do not constitute any kind of representation of "appropriate[ness] for young consumers"—especially when the very caffeine content of which Plaintiffs complain is clearly listed next to that lightning bolt logo and there is a clear warning in plain English capital letters that the product is not suitable for those under 18. (*Id.*; PRIME Energy Label, attached at Exhibit A.)) Finally, while Plaintiffs allege that Organizational Defendants'

---

[7] Rule 9(b)'s heightened pleading standard also applies to Plaintiffs' claim for unjust enrichment as it is based on the same allegations of misrepresentation and omission as the fraud claims. *See Pixler*, 2011 WL 5597327, at *15 (applying Rule 9(b) to a claim for unjust enrichment).

advertising reaches a mixed audience which includes both adults and children, they do not allege that it reached either Kennedy or Harper. (*See, generally*, FAC.)

None of these allegations—or any of the other allegations in the First Amended Complaint—can reasonably be understood to constitute an affirmative misrepresentation of the appropriateness of 200 milligrams of caffeine for individuals under 18 years of age, particularly when the label specifically says the exact opposite. Under Rule 9(b), Plaintiffs must "specify the statements that the plaintiff contends were fraudulent" along with the who, what, where, when, and why of the statement. *Teamsters Local 237*, 83 F.4th at 524–25. Plaintiffs have failed at the first step—they have not identified a specific statement that they allege was fraudulent—let alone the who said what, when and why the statement is fraudulent.

Plaintiffs' contention that their claims are based on omissions fares no better.[8] For a fraudulent omission claim, Plaintiffs must plead what was omitted and how the omission was misleading, among other things. *Simpson*, 397 F. Supp. 3d at 970. Indeed, a claim of fraud by omission "is grounded in a duty to disclose." *Id.* (quoting *Giddings & Lewis*, 348 S.W.3d at 747). Plaintiffs have neither alleged specifically what was omitted, nor any facts supporting a duty to disclose. And contrary to there being any omission, the PRIME Energy label specifically discloses the information Plaintiffs say was critical to disclose: that the product contains 200 mg of caffeine and that PRIME Energy is "NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE, PEOPLE SENSITIVE TO CAFFEINE, PREGNANT WOMEN OR WOMEN WHO ARE NURSING." (FAC ¶ 58; PRIME Energy Label, attached at Exhibit A.)

---

[8] Neither Plaintiffs' claim for negligent misrepresentation nor fraudulent misrepresentation can be founded on omissions. *Estate of DeMoss*, 234 F. Supp. 3d at 883 (negligent misrepresentation claim requires "an affirmative false statement; a mere omission will not do") (quoting *Gidding & Lewis s*, 348 S.W.3d at 746); *Republic Bank & Tr. Co.*, 683 F.3d at 255 ("fraud by misrepresentation . . . hinges on an affirmative misstatement").

Under the reasonable consumer standard, Plaintiffs must show that members of the public are *likely* to be deceived into believing that there is no caffeine in the product and that it is safe for ingestion by those under 18 years old despite it bearing a prominent label which discloses in multiple places that it contains 200 milligrams of caffeine and that it is "not recommended for children under 18 years of age." Plaintiffs' fraud claims must be dismissed as Plaintiffs have failed to identify any misrepresentations or omissions sufficient to support these claims—let alone pled any such misrepresentations or omissions with the requisite level of particularity under Rule 9(b).

The few direct representations that Plaintiffs identify include only broad, self-serving opinion statements such as that PRIME Energy "provides the boost you need for any endeavor." (FAC ¶ 6.) These representations are nothing more than puffery and do not support their fraud claims. The Sixth Circuit has held that, as a matter of law, "[g]eneralized, subjective terms like 'quality' and 'reliability' are plainly self-serving opinions, puffery on which no buyer would reasonably rely." *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 564 (6th Cir. 2013). Accordingly, they provide no objective, measurable representation. For this additional reason, Plaintiffs' fraud claims, Counts I-VI, must be dismissed.

Finally, Plaintiffs have failed to allege any representation by either Prime LLC or Congo Brands. (*See* FAC generally.) Instead, Plaintiffs improperly lump all Defendants, including the unserved Individual Defendants, together in pleading the alleged misrepresentations and omissions. Rule 9(b), however, requires that when a complaint involves multiple defendants, "each defendant's role must be particularized with respect to their alleged involvement in the fraud." *GMAC Mortg., LLC v. McKeever*, CIV.A. 08-459-JBC, 2010 WL 3470312, at *2 (E.D. Ky. Aug. 31, 2010) (quoting *Coffey v. Foamex, L.P.,* 2 F.3d 157, 161–62 (6th Cir .1993)). Claims are properly dismissed under Rule 9(b) where Plaintiffs fail to "plead more than a generalized

grievance against a collective group of Defendants." *Masterson v. Meade Cnty. Fiscal Court*, 489 F. Supp. 2d 740, 749 (W.D. Ky. 2007). Because Plaintiffs simply lump Defendants together, Plaintiffs have failed to adequately assert a claim against either of the Organizational Defendants and the fraud claims must be dismissed for this added reason.

### B.    Plaintiffs Fail to Allege Any Actionable Damages

      1.    *Plaintiffs' claims brought "as Legal Guardians of John Doe I and John Doe II" fail because Plaintiffs' claimed damages are exclusively tied to the purchase of the product.*

As outlined in the First Amended Complaint, it was Plaintiffs Kennedy and Harper who purchased the PRIME Energy drinks that were allegedly consumed by their sons. (FAC ¶¶ 15-16, 25-26.) Although Plaintiffs' First Amended Complaint makes vague references to mood swings and sleep issues with their sons during the time they were drinking PRIME Energy (*Id.* ¶¶ 17, 23, 28, 32), none of Plaintiffs' legal claims, in fact, are based on any alleged damages to either John Doe I or John Doe II. (*Id.* ¶¶ 94, 105, 120, 128, 139, 157, 165, 173.) Each of Plaintiffs' damage claims are premised exclusively on claims for economic damages arising out of the purchase of PRIME Energy beverages. (*Id.*) There are no allegations that either John Doe purchased any PRIME Energy beverage. (*See, generally*, FAC.) Even if any actionable damages exist (which, as explained below, they do not) for any of Plaintiffs' claims for consumer fraud (be it under the CLRA, FAL, UCL, KCPA, negligent misrepresentations, or fraudulent misrepresentation), unjust enrichment or public nuisance, those damages are exclusively economic in nature and tied to either Kennedy's or Harper's purchases of PRIME Energy. Having failed to plead any claims on behalf of either John Doe I or John Doe II, the claims of Plaintiffs Kennedy and Harper as legal guardians of their respective John Does should be dismissed.

2.     *Plaintiffs' claims fail because they suffered no ascertainable loss.*

Plaintiffs' claims are all based on a damage allegation that they "paid a premium, or otherwise paid more for [PRIME Energy] when they otherwise would not have, absent Defendants' omissions and misstatements." (FAC ¶ 21, 31, 94.) This is the only injury alleged in the First Amended Complaint. It is notable, then, that Plaintiffs got precisely what they paid for: an energy drink which specifically discloses that it contains 200 milligrams of caffeine and warns that consumers should "DRINK RESPONSIBLY NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE, PEOPLE SENSITIVE TO CAFFEINE, PREGNANT WOMEN OR WOMEN WHO ARE NURSING." (FAC ¶ 58; PRIME Energy Label, attached at Exhibit A.)

It is axiomatic that Plaintiffs must show damages for each claim. For example, the KCPA claim requires an "ascertainable loss of money or property as a result of a violation of [KRS] 367.170." *Cole v. Mariner Fin., LLC*, 2023 WL 3570012, at *3 (W.D. Ky. May 19, 2023) (quoting *Ky. Laborers Dist. Council Health & Welfare Tr. Fund v. Hill & Knowlton, Inc.*, 24 F. Supp. 2d 755, 772 (W.D. Ky. 1998)). But in this case, the damages claim underlying *each* of Plaintiffs' theories is that Plaintiffs received something other than what was represented when purchasing PRIME Energy beverages. Because Plaintiffs have not alleged that they received something other than an energy drink containing 200 milligrams of caffeine and that was "NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE", they have failed to allege any damages and, as a result, the First Amended Complaint must be dismissed in its entirety.

## C.     Plaintiffs Fail to Allege Damage Causation

Similarly, each of Plaintiffs' fraud claims requires damage causation—a causal link between Organizational Defendants' actions and Plaintiffs' damages. "The plain meaning of the KCPA damages provision requires [ ] a showing of a causal nexus between the plaintiff's loss and the defendant's allegedly deceitful practice . . . ." *Cole*, 2023 WL 3570012, at *3 (W.D. Ky. May

19, 2023) (quoting *M.T. v. Saum*, 7 F. Supp. 3d 701, 706 (W.D. Ky. 2014)). The CLRA, similarly, requires "[a] causal link between the deceptive practice and damage to the plaintiff is a necessary element of a CLRA cause of action." *Torres v. Adventist Health Sys./W.*, 77 Cal. App. 5th 500, 513, 292 Cal. Rptr. 3d 557, 567 (2022), *review denied* (July 27, 2022). To plead a claim under the UCL or FAL, Plaintiffs must "have lost money or property as a result of the unfair competition." *In re Outlaw Lab., LLP*, 463 F. Supp. 3d 1068, 1085 (S.D. Cal. 2020) (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013)). That is to say, they must plead "a causal connection or reliance on the alleged misrepresentation." *Id.* (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011)).

Plaintiffs' common law fraud claims similarly require a causal connection. A claim for negligent misrepresentation, under Kentucky law, requires that "the false statements allegedly made by the defendant were a proximate cause of the plaintiff's damage." *Estate of DeMoss*, 234 F. Supp. 3d at 883 (citing *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580 (Ky. 2004)). A claim for fraudulent misrepresentation requires both that Plaintiffs "reasonably relied" on the affirmative misrepresentation and that the misrepresentation "caused the plaintiff[s'] injury." *Republic Bank & Tr.*, 683 F.3d at 248.

Here, Plaintiffs have not identified—and cannot possibly identify—a misrepresentation or omission; they have been unable to allege any damages; and have not alleged what representations, specifically, they reviewed or relied on. Without any of those underlying allegations, it is impossible for Plaintiffs to allege that they suffered damages caused by any misrepresentation or omission. For this reason, Plaintiffs' fraud claims all fail and should be dismissed.

**D.     Plaintiffs' UCL Claims Fail as Plaintiffs do not Allege Facts Showing that Legal Remedies are Inadequate to Correct Past Harms**

Plaintiffs' UCL claims (Count III) are purely equitable. *See Fonseca v. Goya Foods, Inc.*, 2016 WL 4698942, at *7-8 (N.D. Cal. Sept. 8, 2016). As the Ninth Circuit held in *Sonner v. Premier Nutrition Corp.*, when, as here, plaintiffs do not allege facts showing that legal remedies are inadequate to correct past harms, claims for equitable relief under the UCL should be dismissed. 971 F.3d 834, 844 (9th Cir. 2020). Many courts have held that *Sonner* applies at the pleading stage.[9] The reasoning in *Sonner* applies with particular force here because Plaintiffs allege, and hence admit, that money damages can address the alleged injury. (FAC ¶ 139.) Indeed, courts have regularly held that when a plaintiff seeks damages "the availability of an adequate legal remedy [wa]s clear from the face of the [complaint]." *Hamm v. Mercedes-Benz USA, LLC*, 2022 WL 913192, at *1-3 (N.D. Cal. Mar. 29, 2022); *see also Brand v. Nissan N. Am.*, 2017 WL 11610900, at *3-5 (C.D. Cal. May 16, 2017) (similar).

For this additional reason, Plaintiffs' UCL claim should be dismissed with prejudice.

**E.     Plaintiffs Fail to Allege They Were in Privity with Organizational Defendants**

There is no allegation in the First Amended Complaint that Plaintiffs purchased PRIME Energy directly from any of the Organizational Defendants. Instead, Plaintiffs allege that they bought PRIME Energy beverages at "major and local grocery store [*sic*], including Walmart, CVS, and Target." (FAC ¶ 44.) Plaintiff Harper specifically alleges that he bought PRIME Energy at "local grocery stores, including the 'People's Market', a liquor store, and at larger grocery chains like Safeway." (*Id.* ¶ 26.) A claim under the KCPA, however, requires that Plaintiffs be in privity with Organizational Defendants:

---

[9] *See, e.g.*, *Gibson v. Jaguar Land Rover N. Am., LLC*, 2020 WL 5492990, at *3 (C.D. Cal. Sep. 9, 2020) (dismissing equitable claims at the pleading stage following *Sonner*); *Schertz v. Ford Motor Co.*, 2020 WL 5919731, at *2 (C.D. Cal. July 27, 2020) (same).

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170, may bring an action under the Rules of Civil Procedure in the Circuit Court in which the seller or lessor resides or has his principal place of business or is doing business, or in the Circuit Court in which the purchaser or lessee of goods or services resides, or where the transaction in question occurred, to recover actual damages.

KRS § 367.220(1). "The Kentucky Supreme Court has construed this provision to mean that an individual must be a purchaser with privity of contract in order to have standing to bring an action under the Act." *Williams v. Chase Bank USA, N.A.*, 390 S.W.3d 824, 829 (Ky. Ct. App. 2012), *review denied* (Feb. 13, 2013). Similarly, "[t]he Sixth Circuit and the majority of the federal district courts have [held] that privity is required under the KCPA." *Simpson*, 397 F. Supp. 3d at 963 n. 10 (E.D. Ky. 2019); *see also Helton v. Am. Gen. Life Ins.*, 946 F. Supp. 2d 695, 702 (W.D. Ky. 2013) (Kentucky courts have interpreted the Kentucky Consumer Protection Act to "contemplate an action by a purchaser against [the] immediate seller," and "that privity of contract exist between the parties in a suit alleging a violation of the Consumer Protection Act.").

Because there is no privity between Plaintiffs and Organizational Defendants, Plaintiffs' KCPA claim necessarily fails and should be dismissed with prejudice.

### F.    Plaintiffs' Negligent Misrepresentation Claim Fails as Organizational Defendants Are Not "In The Business of Supplying Information"

As this Court has held, a claim for negligent misrepresentation under Kentucky law "is available only when the defendant is in the business of supplying information." *United Parcel Serv. Co. v. DNJ Logistic Grp., Inc.*, 3:16-CV-00609-GNS-DW, 2017 WL 3097531, at \*7 (W.D. Ky. July 20, 2017) (Stivers, J.) (citing *Giddings & Lewis*, 348 S.W.3d 729). In *United Parcel Service*, this Court collected and analyzed state and federal cases regarding claims for negligent misrepresentation and held that a negligent misrepresentation claim "does not apply to product manufacturers because . . . manufacturers are not in the business of supplying information." *Id.*

(citing *Giddings & Lewis*, 348 S.W.3d at 744-46). This is because "[a] manufacturer of a product is not in the business of supplying information but rather the product itself and, only incidentally, information about the product." *Giddings & Lewis*, 348 S.W.3d at 744-45.

The same is true here. Organizational Defendants are in the business of supplying "the product itself." As Plaintiffs allege, Organizational Defendants "manufacture, distribute, advertise, and sell various flavors of the Product." (FAC, ¶ 2.) Because Plaintiffs have not alleged the Organizational Defendants are in the business of supplying information (rather than the business of supplying PRIME Energy drinks), Plaintiffs' negligent misrepresentation claim necessarily fails and should be dismissed with prejudice.

### G. Plaintiffs' Unjust Enrichment Claim Fails as Plaintiffs Did Not Directly Confer a Benefit on Organizational Defendants

"In Kentucky, to sustain a claim for unjust enrichment a plaintiff must establish three elements: '(1) [a] benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of that benefit without payment for its value.'" *Simpson*, 397 F. Supp. 3d at 973 (E.D. Ky. 2019) (quoting *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 778 (Ky. 2017)). "Kentucky courts have consistently found that the first element not only requires a benefit be conferred upon the defendant, but also that the plaintiff be the party conferring that benefit." *Id.* (quoting *Pixler v. Huff*, No. 3:11-CV-00207-JHM, 2011 WL 5597327, at *11 (W.D. Ky. Nov. 17, 2011)). That is to say, under Kentucky law, "the plaintiff 'must show that he conferred a benefit directly upon [defendants].'" *Id.* (quoting *Lewis v. Jones*, No. 6:17-CV-38, 2018 WL 5043773, at *5 (E.D. Ky. Oct. 17, 2018)) (alterations in original).

Plaintiffs allege that they bought PRIME Energy beverages at "major and local grocery store [*sic*], including Walmart, CVS, and Target." (FAC ¶ 44.) Plaintiff Harper alleges that he

bought PRIME Energy at "local grocery stores, including the 'People's Market', a liquor store, and at larger grocery chains like Safeway." (*Id.* ¶ 26.) In this case, as in *Simpson*, "Plaintiffs did not directly confer a benefit on [Defendants]." *Simpson*, 397 F. Supp. 3d at 974. The *Simpson* court held that "[t]he fact that '[Champion] charged [premium] prices for [dog food]; retailers then passed the cost to customers; customers paid these prices; and [Champion] profited' is simply 'insufficient to plead unjust enrichment.'" *Id.* (quoting *Commonwealth of Kentucky v. Marathon Petroleum Co., LP*, 191 F. Supp. 3d 694, 706 (W.D. Ky. 2016)) (modifications in original). The same holds true here. The fact that Plaintiffs supposedly paid premium prices when they purchased PRIME Energy from retailers is insufficient to plead a claim for unjust enrichment. Any other outcome "would overextend the equitable doctrine and allow every unsatisfied consumer to sue a manufacturer when they feel the value of their purchase is somehow diminished." *Id.* Such an outcome would be "contrary to the general purpose of an unjust enrichment claim, which exists to compensate for benefits conferred, not loss suffered." *Id.* (collecting cases).

### H.     Public Nuisance Does Not Apply to the Lawful Sale of Products That Do Not Affect a Public Right

Plaintiffs next attempts to expand public nuisance law in Kentucky by seeking to assert a public nuisance claim to the sale of lawful products. Plaintiffs appear to allege a "public health crisis" for children consuming PRIME Energy drinks containing caffeine. Ignoring the absence of any facts showing there is any such public health crisis, such a claim is inconsistent with Kentucky law on public nuisance. And, as outlined below, courts throughout the country have been wary of extending public nuisance law to the sale of lawful products.

Under Kentucky law, a nuisance is "a class of wrongs that 'arises from the unreasonable, unwarranted, or unlawful use by a person of his own property and produces such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage.'"

*Smith v. Carbide & Chems. Corp.,* 507 F.3d 372, 379 (6th Cir. 2007) (quoting *City of Somerset v. Sears,* 313 Ky. 784, 233 S.W.2d 530, 532 (Ky. 1950)) (internal quotations omitted). There are two types of nuisance: private and public. *W.G. Duncan Coal Co. v. Jones,* 254 S.W.2d 720, 723 (Ky. 1953).

A public nuisance is a condition that is prejudicial to the health, comfort, safety, property, sense of decency, or morals of the citizens at large, resulting either from an act not warranted by law or from neglect of a duty imposed by law. *Nuchols v. Commonwealth,* 312 Ky. 171, 226 S.W.2d 796, 798 (Ky. 1950). Unlike private nuisance, which is concerned with the invasion of an individual's right to use and enjoy her land, public nuisance is concerned with the invasion of rights common to the public. *Regional Airport Auth. of Louisville and Jefferson County v. LG, LLC,* 255 F. Supp. 2d 688, 692 (W.D. Ky. 2003) (citing *Philadelphia Electric v. Hercules, Inc.,* 762 F.2d 303, 315 (3rd Cir. 1985)). Public nuisances are generally redressed by an action in the name of the governing body, or its authorized representative to restrain or abate the nuisance. *Id.* (*citing* 58 Am Jur 2d *Nuisances* § 246 (2002)). For a private party to recover for a public nuisance, it must allege and show unusual or special damages, differing from those sustained by the community at large. *Id.*

In alleging that parents could, supposedly unwittingly, purchase PRIME Energy drinks for their children and that their children could thereby suffer harm from drinking PRIME Energy drinks containing caffeine, Plaintiffs meet no criteria for a public nuisance claim. Plaintiffs have not alleged a condition prejudicial to the health, comfort, safety, property, sense of decency, or morals of the citizens at large resulting either from an act not warranted by law or neglect of a duty imposed by law. Rather, Plaintiffs impermissibly seek to transform their claims, which are based

solely on alleged harm to a select group of people (parents who permit their minor children to drink PRIME Energy drinks), to a violation of a public right.

Further, Courts have consistently rejected efforts to expand public nuisance law to the sale of lawful products because such allegations do not involve interference with a "public right," and the alleged injuries are limited to those individuals who were directly exposed to the product, rather than the general public. *See In re Paraquat Prods. Liability Litig.*, 2022 WL 451898 (S.D. Ill. Feb. 14, 2022) (refusing to extend public nuisance to the sale of herbicide products); *In re Lead Paint Litig.*, 924 A.2d 484, 505 (N.J. 2007) (to allow nuisance suits for the sale and distribution of a product would "supplant an ordinary product liability claim with a separate cause of action as to which there are apparently no bounds"); *Tioga Pub. Sch. Dist. #15 v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993) (refusing to "extend[] the application of the nuisance statute to situations where one party has sold to the other a product that later is alleged to constitute a nuisance," noting that "North Dakota cases applying the state's nuisance statute all appear to arise in the classic context of a landowner or other person in control of property conducting an activity on his land in such a manner as to interfere with the property rights of a neighbor").

This is true even in cases where it is a governmental entity (as opposed to a private plaintiff) that is attempting to enforce public nuisance on behalf of the public (as opposed to a select group of individuals). *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 721, 726 (Okla. 2021) (applying standard common-law principles to hold that "public nuisance law does not extend to the manufacturing, marketing, and selling of prescription opioids"); *City of Huntington v. AmerisourceBergen Drug Corp., et al.*, 2022 WL 2399876, at *56–59 (S.D. W. Va. July 4, 2022) (same); *People v. Purdue Pharma L.P.*, 2021 WL 7186146, at *3–11 (Cal. Super. Ct. Dec. 14, 2021) (same); *S.D. ex rel. Ravnsborg v. Purdue*, 2021 WL 5636563 (S.D. Cir. Ct. Jan. 13, 2021)

(prescription opioids); *State ex rel. Jennings v. Purdue*, 2019 WL 446382, at *1, 11-13 (Del. Super. Ct. Feb. 4, 2019) (prescription opioids); *N.D. ex rel. Stenehjem v. Purdue*, 2019 WL 2245743 (N.D. Dist. Ct. May 10, 2019) (same).

As one state supreme court recently put it, "[e]xtending public nuisance law to the manufacturing, marketing, and selling of . . . opioids . . . would allow consumers to convert almost every products liability action into a public nuisance claim." *Hunter*, 499 P.3d at 729–30 (alteration omitted). "Nuisance thus would become a monster that would devour in one gulp the entire law of tort." *Stenehjem*, 2019 WL 2245743, at *13.

Plaintiffs make no effort to allege facts supporting a condition that is prejudicial to the health, comfort, safety, property, sense of decency, or morals of the citizens at large, resulting either from an act not warranted by law or from neglect of a duty imposed by law, nor an invasion of rights that are common to the public. At most, Plaintiffs' claim (even if feasible under Kentucky law in the first place) would apply to a narrow set of individuals—parents of minors who have purchased and let their child consume a PRIME Energy drink—rather than any invasion of rights "common to the public." As a result, Plaintiffs' public nuisance claim should be dismissed.

## I.     No Injunctive Relief Is Available

Plaintiffs lack standing to assert a claim for injunctive relief. The Sixth Circuit has been unequivocal that "an imminent future injury must exist to obtain the types of forward-looking equitable remedies [Plaintiffs] seek here." *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1017 (6th Cir. 2022). Indeed, "plaintiffs seeking the forward-looking remedy of an injunction must establish a likelihood that defendants will continue to violate their rights *in the future*." *Reform Am. v. City of Detroit, Michigan*, 37 F.4th 1138, 1148 (6th Cir. 2022), *cert. denied,* 143 S. Ct. 448, 214 L. Ed. 2d 255 (2022) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (*emphasis in original*)); *see also Davis v. Colerain Twp., Ohio*, 51

F.4th 164, 171 (6th Cir. 2022) ("A previously harmed plaintiff may not seek a forward-looking remedy . . . without evidence that the harmful conduct will reoccur.").

In this case, Plaintiffs allege that they purchased PRIME Energy for their respective sons during a one-month period sometime in 2023. (FAC ¶¶ 15-16, 25-26.) Kennedy alleges that she stopped buying PRIME Energy after she "researched PRIME Energy." (*Id.* ¶ 17.) Harper alleges that he stopped buying PRIME Energy "because Instagram started saying it had a lot of caffeine and it was not healthy." (*Id.* ¶ 28.) Plaintiffs both allege that they would not have purchased PRIME Energy knowing that PRIME Energy contains 200 milligrams of caffeine and is not recommended for children under 18 years old. (*Id.* ¶¶ 20, 30.) So, now that Plaintiffs are aware of these facts (as they would have been had they reviewed the label), there is no risk that Plaintiffs will buy PRIME Energy for their sons again. Plaintiffs simply cannot allege any risk of a future injury—let alone an imminent future injury. Without such an allegation, Plaintiffs' claims for injunctive relief necessarily fail and should be dismissed with prejudice.

### J.      Plaintiffs' Claims Should Be Dismissed With Prejudice

Organizational Defendants filed a Motion to Dismiss on these same grounds on November 15, 2023. (ECF 19.) Plaintiffs had time to consider these arguments and ultimately decided to request leave to amend. (ECF 26, ECF 27.) Nonetheless, Plaintiffs First Amended Complaint proceeds under the same flawed legal theories and without identifying a single misrepresentation or omission—let alone a misrepresentation or omission that Plaintiffs reviewed or relied on. Where, as here, Plaintiffs knew the sufficiency of their complaint was at issue and had an opportunity to brief a motion to dismiss, a dismissal with prejudice is appropriate. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 438 (6th Cir. 2008) (affirming a dismissal with prejudice where "Total Benefits had an opportunity to brief the motions. Total Benefits knew the sufficiency of their complaint was at issue.").

## V.    CONCLUSION

Plaintiffs ignored the label of the PRIME Energy beverages they bought. Had they simply reviewed the labels as any reasonable consumer would, they would have seen that each can of PRIME Energy contained "200mg CAFFEINE" and cautioned consumers that PRIME Energy— and all energy drinks—are "NOT RECOMMENDED FOR CHILDREN UNDER 18 YEARS OF AGE." (FAC ¶ 58; PRIME Energy Label, attached at Exhibit A.) Despite these clear warnings, Plaintiffs purchased PRIME Energy and served it to their children. Now, they seek to hold Organizational Defendants liable for their decision to ignore the clear warning on the label. For all of these reasons, Plaintiffs' First Amended Complaint should be dismissed.

Respectfully submitted,

*/s/ Jason P. Renzelmann*
D. Christopher Robinson
Jason P. Renzelmann
FROST BROWN TODD LLP
400 W. Market St., 32nd Floor
Louisville, KY 40202
(502) 589-5400
crobinson@fbtlaw.com
jrenzelmann@fbtlaw.com

Francis A. Citera (*pro hac vice*)
citeraf@gtlaw.com
Gretchen N. Miller (*pro hac vice*)
millerg@gtlaw.com
Brian D. Straw (*pro hac vice*)
brian.straw@gtlaw.com
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: 312.456.8400
Facsimile: 312.456.8435

*Counsel for Defendants Prime Hydration*
*LLC and Congo Brands LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2024, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Edward W. Ciolko
Jennifer Sarah Czeisler
Sterlington PLLC
One World Trade Center, 85th Floor
85th Floor
New York, NY 10007
(610)-306-4413
edward.ciolko@sterlingtonlaw.com
jen.czeisler@sterlingtonlaw.com

J. Chris Sanders
Bahe Cook Cantley & Nefzger PLC
1041 Goss Avenue
Louisville, KY 40217
(502) 587-2002
csanders@chrissanderslaw.com

James M. Evangelista
Evangelista Worley LLC
500 Sugar Mill Road, Suite 245A
Atlanta, GA 30350
(404) 205-8400
jme@ewlawllc.com

*Counsel for Plaintiffs*

*/s/Jason P. Renzelmann*
*Counsel for Defendants Prime Hydration*
*LLC and Congo Brands LLC*

0149492.0777393   4854-4342-3912

26