**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:23-CV-00476-GNS**

**TURKOISE KENNEDY, et al.**                                                    **PLAINTIFFS**

**VS.**

**PRIME HYDRATION, LLC, et al.**                                              **DEFENDANTS**

**MEMORANDUM OPINION**
**AND ORDER**

At issue in this class-action marketing fraud case is whether Logan Paul ("Paul") and Olajide Olayinka Williams Olatunji, aka "KSI", the part owners, co-creators, and promoters of Defendant Prime Hydration, LLC ("Prime"), must be designated as custodians for the search, collection, and production of text messages, internal messages, and emails from their personal electronic devices.

The Parties requested the Court's assistance regarding this dispute and participated in a telephonic conference on May 19, 2026. (*See* DN 130). Prior to the conference, the Parties submitted brief memoranda setting forth the nature of the dispute. After hearing arguments from the Parties, the Court gave them an additional fourteen days to simultaneously supplement their preconference memoranda on the issue. (DN 131). The Parties have each submitted a supplemental memorandum, and the matter now stands submitted for ruling.

I.    Background

Paul and KSI each have a 20% ownership stake in Prime Hydration. According to the Prime website, the pair created and launched Prime Hydration in 2022. *About Prime*, PRIME BY LOGAN PAUL X KSI, http://drinkprime.com/pages/about-prime (last visited June 26, 2026). In

early 2023, Paul and KSI expanded their brand to include a new beverage category – Prime Energy.

*Prime Introduces New Ready-To-Drink Line 'Prime Energy,'* PR NEWSWIRE, https://www.prnewswire.com/news-releases/prime-introduces-new-ready-to-drink-line-prime-energy-301712642.html (last visited June 25, 2026).

The two are the public faces of the company and are deeply intertwined in the marketing of Prime products. Type "Prime Energy Drink" into a Google search, and the first result that populates is Prime's website titled "PRIME By Logan Paul x KSI." The website's "About Prime" section is written by KSI & Logan Paul and states in relevant part –

> We created PRIME to showcase what happens when rivals come together . . .
>
> We dropped our first production, PRIME Hydration in 2022 and since then, we've continued to work countless hours to expand in retailers, reach new markets and formulate new products we know you'll love.
>
> We've been humbled by the process of creating a real brand . . .
>
> -   KSI & Logan Paul

*About Prime*, PRIME BY LOGAN PAUL X KSI, http://drinkprime.com/pages/about-prime (last visited June 26, 2026). Additionally, photos of Paul and KSI are prominently placed on the website, and the two regularly promote Prime products to their prolific social media following.[1] *Id.*; *see also* @loganpaul, INSTAGRAM (Posts), Instagram.com (last visited June 26, 2026); @ksi, INSTAGRAM (Posts), Instagram.com (last visited June 26, 2026). Paul and KSI also promote PRIME products through sponsorships, events, and partnerships. *See, e.g.,* Ryan Morik, *Logan Paul's 'Prime' becomes WWE's largest sponsor in company history and will be first in-ring ad*, FOX BUSINESS (Mar. 8, 2024, 10:39 PM), https://www.foxbusiness.com/sports/logan-pauls-prime-wwes-largest-sponsor-company-history-first-ring-ad ("Paul said in a statement[:]

---

[1] Paul and KSI have a combined 40 million followers on YouTube.

'We've worked incredibly hard at Prime to build a brand that disrupts the beverage industry and it's time to join forces with the global leader in sports entertainment.'").

Plaintiffs Turkoise Kennedy, et al. ("Plaintiffs") brought this class-action against Defendant Prime in September 2023, alleging that Prime designed, branded, and advertised its Prime Energy products (highly caffeinated energy drinks) to closely mirror its Prime Hydration products (caffeine-free sports drinks). (DN 1; DN 77). The similar designs, Plaintiffs allege, misled child consumers into drinking the harmful Prime Energy products. (*Id.*). Plaintiffs initially named Paul and KSI in the Complaint but later voluntarily dismissed them. (DN 60). Despite dismissing Paul and KSI as parties in the action, Plaintiffs directed written discovery requests to Paul and KSI on matters over which they have knowledge, communications, and documents.

## II.    The Dispute

In INT Nos. 1 and 7-10, Plaintiffs requested identification of persons involved in Prime Energy's marketing and packaging design. Defendants omitted Paul and KSI from their response. Plaintiffs request that Paul and KSI be identified as custodians and that their personal devices be searched for information and documents relevant to the claims and defenses in the case. Additionally, in RFP Nos. 41-45, Plaintiffs requested specific materials Paul has publicly described creating or using that they believe go directly to the marketing and branding of Prime Energy, including: (1) a group text thread Paul says keeps him "in the trenches every single day" with Defendants' leadership team; (2) the hand-drawn Prime logo sketch Paul created and the brand still uses; and (3) other branding mockups Paul and KSI generated. Prime opposes this discovery, claiming the information is not relevant, that it does not have custody, possession, or control of Paul and KSI's devices, and that production would be an undue burden.

3

III.    Standard

The scope of discovery, as provided in Rule 26(b)(1) is intentionally broad and encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In considering proportionality, courts should evaluate "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*   Information that is discoverable is not necessarily admissible in evidence. *Id.*

Rule 34(a)(1) provides that a party may serve on any other party a request within the scope of Rule 26(b) "to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control . . . ." Fed. R. Civ. P. 34(a)(1). Rule 37 permits a party seeking discovery to move for an order compelling an answer or production if another party fails to provide discovery responses. Fed. R. Civ. P. 37(a)(3)(B). The "proponent of a motion to compel discovery bears the initial burden of proving the information sought is relevant." *O'Malley v. Naphcare Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015) (quoting *Hendricks v. Hazzard*, No. 2:11-cv-399, 2013 WL 4052873, at *3 (S.D. Ohio Aug. 12, 2013) (internal citation omitted)). If the moving party proves relevance, the burden shifts to the party resisting production to establish "the information is either not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm." *Id.* (quoting *Wagner v. Circle W Mastiffs*, No. 2:08-cv-431, 2013 WL 4479070, at *3 (S.D. Ohio Aug. 19, 2013) (citation omitted)).

IV.    Analysis

A.  Can Plaintiffs prove relevancy?

Plaintiffs rely on an order from the *Agrovana v. Congo* case from the District of Massachusetts where the plaintiff brought a breach-of-contract action against Prime Hydration and moved to compel Prime to perform a manual review of leadership communications, including WhatsApp and Microsoft Teams messages. (Ex. 1, Plaintiffs' Memorandum, at pp. 2, 4 (citing DN 81, *Agrovana, LLC v. Congo Brands LLC, et al.*, No. 24-12400-FDS, at 4-5 (D. Mass. Feb. 6, 2026)). The court ordered Prime to produce "any text, WhatsApp, or Teams communications between or among Trey Steiger, Max Clemons, Logan Paul, and Olajide 'KSI' Olatunji from January 1, 2024, to September 19, 2024, that are responsive to Agrovana's discovery requests." DN 81, *Agrovana, LLC,* No. 24-12400-FDS, at 4-5.

> In a footnote, the court elaborated:
>
> In response to Agrovana's assertion that there was 'only one Teams message between or among Congo and its partners (including Olajide 'KSI' Olatunji and Logan Paul, as well as its other investors and partners),' Prime asserts that this Court's previous order was limited to 'leadership team' and did not explicitly name 'partners' or other 'investors' as subject to the motion to compel. Docket Number 67 at 7. As the primary faces of Prime's brand, Logan Paul and KSI are relevant to this inquiry as they **are likely to possess discoverable information regarding the brand's business decisions and public representations.** To exclude communications with Logan Paul or KSI under the guise that they are 'partners' rather than 'leadership' does not appear appropriate in this context. To the extent that there was any ambiguity in the previous order, I now clarify that the search should include custodians Trey Steiger, Max Clemons, Logan Paul, and Olajide 'KSI' Olatunji.

*Id.* at 5, n. 2 (emphasis added).

Because the *Agrovana* court rejected Prime's efforts to shield Paul and KSI from discovery, Plaintiffs argue they should likewise not be shielded here. Plaintiffs assert Paul and KSI's likelihood of possessing relevant information is even higher in this case since Paul has publicly

stated his and KSI's hands-on role in the branding and marketing of Prime products. (Ex. 1, Plaintiffs' Memorandum, at pp. 2, 4).

Prime responds that the *Agrovana* case is distinguishable because that court did not order the collection, search, or review of production from Paul and KSI's personal devices and accounts, as Plaintiffs request here. (Ex. 4, Defendants' Supplemental Memorandum, at pp. 2-4). Prime explains that the plaintiff in *Agrovana* sought manual review of two owners' (Trey Steiger and Max Clemons) text/WhatsApp/Teams messages with one another, as well as their partners, Paul and KSI, for responsive communications. (*Id.*). But, Prime clarifies, the plaintiff in the *Agrovana* case did not ask it to collect directly from Paul and KSI. (*Id.*). Additionally, Prime emphasizes it is already collecting records in this case from the two owners referenced by the *Agrovana* court, Steiger and Clemons. (*Id.*). Prime maintains it has already collected and searched the emails, internal messages and text messages of relevant employees. (*Id.*).

Plaintiffs claim the distinctions between *Agrovana* and this case do "nothing to blunt *Agrovana's* recognition that Paul and KSI hold communications relevant to the branding and marketing decisions Defendants chose to pursue." (Ex. 3, Plaintiffs' Supplemental Memorandum, at pp. 3-4). Because Plaintiffs' investigation here has yielded public admissions from Paul regarding his and KSI's role in promotion and marketing, Plaintiffs argue the *Agrovana* court's conclusion as to Paul and KSI's likelihood of possessing discoverable information is even more compelling. (*Id.*).

This Court is not bound to adopt any conclusions from the District of Massachusetts' order in the *Agrovana* case. And the claims and facts of this case are distinct from those in *Agrovana*. Even so, the Court finds persuasive the *Agrovana* court's discussion that Paul and KSI were likely to possess discoverable information regarding the brand's business decisions and public

6

representations, as well as the court's determination that searches should include Paul and KSI as custodians.

The Court equally finds that Paul and KSI are likely to possess discoverable information regarding the branding and marketing of Prime's products, which is at issue in this case. Plaintiffs produce evidence demonstrating Paul and KSI's integral involvement in branding and marketing. Notably, Plaintiffs cite the Prime website's "About PRIME" section and a YouTube video of Paul stating he conceived Prime from the "ground-up," including its name and logo, and directed Prime's marketing personnel to develop the necessary mock-ups, as well as describing the brand as something he and KSI came up with jointly. *About Prime*, PRIME BY LOGAN PAUL X KSI, http://drinkprime.com/pages/about-prime (last visited June 26, 2026); *Logan Paul Finally Beats KSI, Hasbulla Cancelled, Kim Kardashian Caught w/ PRIME — IMPAULSIVE EP 372*, YouTube (Apr. 4, 2023), https://www.youtube.com/watch?v=SCniw8Xw1v0, at 59:09. Plaintiffs also point to another YouTube video, in which Paul discussed an instant messaging thread where he, KSI, and other members of Prime's leadership are in the trenches, texting as a group, and riffing on Prime business ideas "every single day, 24 hours a day." *See Logan Paul Reveals Truth on Nina Vs. Dillon Danis, Secret Injury & Becoming a Billionaire- BS EP. 29*, YOUTUBE (Oct. 5, 2023), https://www.youtube.com/watch?v=OpXtvD2HCpc, at 21:10. From a third YouTube video, Plaintiffs highlight Paul's statement that his and KSI's repeated promotions of Prime on their personal social media accounts results in Prime running "a zero-dollar marketing budget." *The Truth About PRIME | Logan Paul & KSI Full Interview | Kyle & Jackie O Show*, YOUTUBE (Feb. 26, 2023), https://www.youtube.com/watch?v=0RRveqPVeBA, at 06:18.

Again, the scope of relevancy is broad. Plaintiffs' claims in this action relate specifically to the marketing and promotion of Prime Hydration and Prime Energy Products. (*See* DN 1; DN

7

77). Prime's website, coupled with Paul's public representations regarding his and KSI's involvement with Prime's marketing and branding, establish that Paul and KSI likely have information relevant to the claims and defenses in this case.

    B.  Are Paul and KSI's documents and information within Prime's custody, possession, or control?

Plaintiffs having established relevancy, the next inquiry is whether Prime has custody, possession or control of Paul and KSI's responsive information. Plaintiffs maintain that Paul and KSI qualify as agents under the framework from Federal Rule of Civil Procedure 34 and that Prime has actual implied authority over Paul and KSI. (Ex. 1, Plaintiffs' Memorandum, at pp. 5-6). According to Plaintiffs, Paul and KSI are agents in promoting Prime because they publicly hold themselves out as Prime Energy's creators, owners, and promotional engine, because Prime depends on Paul and KSI's promotional activity even more than formal marketing, and because Prime has never disavowed Paul or CSI's promotional activity and have instead publicized it. (*Id.*).

Prime responds that Plaintiffs have produced no evidence demonstrating Paul and KSI are agents of Prime under Federal Rule of Civil Procedure 34, meaning Prime cannot exert a right of control over the communications on their personal devices. (Ex. 2, Defendants' Memorandum, at pp. 2-5). Prime says it has no control over Paul and KSI in any respect, much less control over their personal communications and data sources. (*Id.*). Additionally, Prime argues it has no "apparent authority" over Paul or KSI because they are merely "minority co-owners and public figures" that broadly promote the Prime brand. (*Id.*). Such voluntary actions by Paul and KSI, Prime argues, are "not sufficient to raise the specter of apparent agency authority. (*Id.*). Prime concludes Plaintiffs should seek the requested information from Paul and KSI through third-party subpoenas. (*Id.* at p. 5).

Plaintiffs, in their supplemental filing, take issue with Prime recasting their discovery requests as "an invasive demand for Paul and KSI's personal devices." (Ex. 3, Plaintiffs' Supplemental Memorandum, at pp. 2-3). Plaintiffs clarify the question here is one of agency, not of whether the information or documents at issue are located on a personal or corporate device. (*Id.*). And, Plaintiffs point out, the Prime employees already being searched as custodians in discovery also did not have corporate devices, and Prime did not object to searches on that basis. (*Id.*).

Courts across the nation have generally applied two standards when determining whether a responding party has control over information requested in discovery – the "legal right" standard and the "practical ability" standard. *See Allergan, Inc. v. Revance Therapeutics, Inc.*, No. 3:23-cv-00431, 2025 WL 984792, at *4 (M.D. Tenn. Mar. 17, 2025). Those applying the "legal right" standard assess whether the responding party "has the legal right to obtain the documents on demand from someone else," which is "understood to include 'the legal right to command release from the party with actual possession.'" *Id.* (quoting *Halabu Holdings, LLC v. Old Nat'l Bancorp*, No. 20-2020 WL 12676263, at *3 (E.D. Mich. June 9, 2020) (quoting *Hayse v. City of Melvindale*, No. 17-13294, 2018 WL 3655138, at *6 (E.D. Mich. Aug. 2, 2018), *objections overruled*, No. 17-13294, 2018 WL 4961528 (E.D. Mich. Oct. 15, 2018)), *J.S.T. Corp. v. Robert Bosch LLC*, No. 15-13842, 2019 WL 2354631, at *6 (E.D. Mich. June 3, 2019) (quoting The Sedona Conference, *The Sedona Conference Commentary on Rule 34 and 45 "Possession, Custody, or Control*," 17 SEDONA CONF. J. 467, 484 (2016)). In other words, "[d]ocuments are not discoverable under Rule 34 if the entity that holds them 'could legally – and without breaching any contract – continue to refuse to turn over such documents.'" *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-cv-04236-BLF, 2015 WL 8482256, at *3 (N.D. Cal. Dec. 10, 2015) (citation omitted)).

Other courts adopt a "more expansive notion of 'control,'" extending it to circumstances "where a party has the 'practical ability to obtain the documents from a nonparty to the action.'" *Flagg v. City of Detroirt*, 252 F.R.D. 346, 353, n.16 (E.D. Mich. 2008) (quoting *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146 (S.D.N.Y. 1997)). Under this standard, courts focus on "the responding party's relationship with the non-party owner of the requested information, including whether the responding party considers the requested information to be records that it requests and obtains in the ordinary course of business, whether the case history demonstrates the non-party's cooperation in producing documents or otherwise assisting in discovery, and whether the non-party has a personal financial interest in the litigation's outcome." *Allergan, Inc.,* 2025 WL 984792, at *5 (citing *St. Clair Cnty. Emps. Ret. Sys. V. Acadia Healthcare Co.*, No. 3:18-cv-00988, at *10 (M.D. Tenn. Sept. 7, 2022), *aff'd* 2023 WL 3659734 (M.D. Tenn. May 25, 2023); *Gross v. Lunduski*, 304 F.R.D. 136, 142 (W.D.N.Y. 2014); *Libertarian Party of Ohio v. Husted*, No. 2:13-CV-953, 2014 WL 3928293, at *1-2 (S.D. Ohio Aug. 12, 2014); *Afremov v. Sulloway & Hollis, P.L.L.C.*, No. 09-03679, 2011 WL 13199154, at *2 (D. Minn. Dec. 2, 2011)).

In *In re Bankers Trust Co.*, the Sixth Circuit stated that "federal courts have consistently held that documents are deemed to be within the 'possession, custody, or control' for purposes of Rule 34 if the party has *actual* possession, custody or control, or has the legal right to obtain the documents on demand." 61 F.3d 465, 469 (6th Cir. 1995) (emphasis in original) (citations omitted)). Some courts and commentators read this statement as the Sixth Circuit's adoption of the "legal right" standard. *See, Halabu Holdings, LLC*, 2020 WL 12676263, at *3; *J.S.T. Corp.*, 2019 WL 2354631, at *6; *Flagg*, 252 F.R.D. at 353; The Sedona Conference, *supra* (concluding that the Sixth Circuit follows the "legal right" standard). Other courts within the Sixth Circuit, however, have held that "control" includes "the practical ability to produce documents from a third

party." *St. Clair Cnty.*, 2022 WL 4095387, at *9; *Union Com. Servs.*, 2018 WL 558760, at *2 (E.D. Mich. Jan. 25, 2018) ("[D]iscovery is within a party's control when the party has the 'practical ability to obtain the documents, particularly when the opposing party does not have the same practical ability to do so.").

Courts may rely on the federal common law of agency to determine whether a party has the "legal right" or "practical ability" to obtain documents from a third party under Rule 34. This District has provided three theories for establishing an agency relationship. First is actual authority – where "at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act."[2] *Jewell v. Magnolia Bank, Inc.*, No. 3:23-cv-78-RGH, 2024 WL 203972 (W.D. Ky. Jan. 18, 2024) (quoting *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 373 (6th Cir. 2015)). Next is apparent authority, which exists when "(1) the principal manifests that another is the principal's agent, and (2) it is *reasonable* for a third person dealing with the agent to believe the agent is authorized to act for the principal." *Id.* (citing *Dechamps v. Bridgestone Arms., Inc. Salaried Employees Ret. Plan*, 840 F.3d 267, 279 (6th Cir. 2016) (citing *Anderson v. Int'l Union, United Plant Guard Workers of Am.*, 150 F.3d 590, 593 (6th Cir. 1998))). Lastly, agency can be demonstrated through ratification, which "occurs when an agent acts for the principal's benefit and the principal does not repudiate the agent's actions." *Id.* (citing *Lucas v. Telemarketer Calling from (407) 476-5680,* No. 18-3633, 2019 WL 3021233, at *5 (6th Cir. May

---

[2] Prime challenges Plaintiffs' reliance on *Jewell* because that case is factually distinguishable and involved the court denying the defendant's motion to dismiss claims for plaintiff's failure to sufficiently allege defendant's liability for a sales agent's conduct. (Prime's Memo, at Pp. 3-4). Prime explains that unlike *Jewell,* Paul and KSI's purported conduct here "involves no such direct contact or solicitation of customers to engage in a legal transaction on behalf of [] Defendnat[s]." (*Id.*). Even though the facts of *Jewell* differ from those here, the Court may still apply the principles of agency law elucidated in *Jewell*. The Court also notes that Paul and KSI's promotions of Prime on the Prime Website and social media could constitute "contact or solicitation of customers to engage in a legal transaction on behalf of [Prime]."

29, 2019) (citing *Sphere Drake Ins. v. Am. Gen. Life Ins.*, 376 F.3d 664, 677 (7th Cir. 2004))).

The Prime website alone is sufficient to establish apparent authority existing between Prime and Paul/ KSI. As noted previously, typing "Prime Hydration" into an internet search engine yields this result:



PRIME By Logan Paul x KSI.
https://drinkprime.com

**Prime Hydration**

Welcome to your **PRIME**. Where great flavor meets function. Zero Added Sugar. 10% Coconut Water. BCAAs, Electrolytes, Antioxidants, and more.

Then, the "About Prime" page, written by Paul and KSI, states they have worked "countless hours to expand in retailers, reach new markets and formulate new products we know you'll love." *About Prime*, PRIME BY LOGAN PAUL X KSI, http://drinkprime.com/pages/about-prime (last visited June 26, 2026). Prime's use of Paul and KSI's names in the website name, as well as attributing the About Prime section to Paul and KSI, which reflects their involvement in retail, marketing, and product development, are manifestation that Paul and KSI are Prime's agents. Prime's social media accounts bolster this finding. Prime's verified Instagram account, @drinkprime, boasts 2.4 million followers and includes the tagline – PRIME by @loganpaul & @ksi. @drink prime, INSTAGRAM, (Posts), Instagram.com (last visited June 26, 2026). Nearly every post to the account's grid features videos of Paul, KSI, or both marketing Prime products. *Id.* On this evidence, a third-party dealing with Paul and KSI could reasonably believe the two are authorized to act on behalf of Prime.

This same information establishes agency between Prime and KSI through ratification. Paul and KSI's marketing of Prime benefits Prime, and Prime has not repudiated their actions. Quite the opposite, Prime has validated copious amounts of promotional content created by Paul

and KSI by "collaborating" with them on Instagram posts, resulting in the content being present on Prime's account.[3] *Id.* This collaborative content, being broadcast to 2.4 million followers of the Prime account, 26 million followers of Paul's account, and 12.9 million followers of KSI's account undoubtedly benefits Prime. And Paul's statements during an interview that he and KSI's repeated promotions of Prime on their personal social media pages have resulted in Prime running a "zero-dollar marketing budget" further supports the benefit that Prime receives from Paul and KSI's actions.[4]

By establishing an agency relationship between Prime and Paul/KSI, Plaintiffs have equally demonstrated that Prime, under either the legal right or practical ability standard, can obtain the relevant documents from Paul and KSI. *See Bardin v. Nissan Motor Co., Ltd.*, No. 1:21-CV-00144-GNS-HBB, 2022 WL 2916687, at *1 (W.D. Ky. July 25, 2022) (citing *McGraw Hill Global Educ., LLC v. Jones*, No. 5:14-CV-42-TBR-LLK, at *6 (W.D. Ky. Aug. 28, 2015) ("The requesting party bears the burden of establishing the relationship between the producing party and the party having possession of the documents that demonstrates the ability to control production of the documents.")). That the *Agrovana* court already found Paul and KSI should be custodians in searches of documents in a separate action against Prime fortifies this conclusion.

    C.  Can Prime demonstrate that collection of the discovery would constitute an undue burden or cause harm?

Because Plaintiffs have established relevance and agency, the burden shifts to Prime to

---

[3] Users can create "Instagram collabs (or collaborative posts) to co-author content with other accounts. The public original author can tag another private or public account as a collaborator. Then, the other account can either accept or deny the request. If the other account accepts, the post will also show on their profile and be distributed to their followers in Instagram feed." About collab posts on Instagram, https://help.instagram.com/291200585956732 (last visited June 25, 2026).

[4] When discussing the marketing of Prime during the interview, Paul stated "we are constantly in your face with this product." Paul continued discussing how besides the "big-game ad," referring to a forthcoming Super Bowl ad, "we have a zero-dollar marketing budget." *The Truth About PRIME | Logan Paul & KSI Full Interview | Kyle & Jackie O Show*, YOUTUBE (Feb. 26, 2023), https://www.youtube.com/watch?v=0RRveqPVeBA, at 06:18.

prove that the discovery is not relevant or so minimally relevant that it would result in an undue burden or harm. *See O'Malley*, 311 F.R.D. at 463. Prime asserts that the documents sought by Plaintiffs from Paul and KSI would be "cumulative and duplicative" of the communications Prime has and will produce, including emails, internal messages, and text messages from relevant employees that have already been searched and collected. (Ex. 2, Defendants' Memorandum, at p. 5). Prime also attempts to refute relevance by explaining that Paul and KSI were "seldom involved" in the 19,330 emails it has gathered from six company custodians. (*Id.* at p. 2). Prime states that only 47 of such emails involve Paul and none involve KSI. (*Id.*).

To challenge the credibility of Prime's allegations of "excess," Plaintiffs clarify that Prime has not completed or begun producing any instant messages from their existing custodians. (Ex. 3, Plaintiffs' Supplemental Memorandum, at p. 6). Plaintiffs also explain that the same counsel for Prime were ordered in *Agrovana* to search for and collect the very text messages that RFP No. 41 seeks, meaning Prime cannot credibly claim ignorance to such a text thread. (Ex. 1, Plaintiffs' Memorandum, at p. 3 n. 1). Excluding Paul and KSI from discovery, Plaintiffs conclude, would leave "a gaping hole at the center of the case" since the requested documents, including hand drawn sketches, branding mockups, and Paul and KSI's communications with each other and third parties about Prime's marketing and branding, lie only with Paul and KSI. (Ex. 2, Plaintiffs' Supplemental Memorandum, at pp. 4, 6).

Prime's previous collection of documents from custodians, whether such documents have been produced to Plaintiffs already or not, does not render Plaintiffs' requested discovery from Paul and KSI duplicative or cumulative. Searches of these custodians' records do not encompass communications between Paul and KSI, between Paul/KSI and third parties, and anything that may be solely in Paul or KSI's possession. To the extent that communications exist between Paul and

14

KSI or between Paul/KSI and third parties relating to the marketing/branding/promotion of Prime products, they must be produced. As demonstrated throughout this Opinion, Paul and KSI are inseparable from Prime's marketing and branding and, therefore, are likely to possess information critical to Plaintiffs' claims in this lawsuit. Moreover, the Court agrees that Prime cannot feign ignorance to the "text thread" Paul referenced in a YouTube video since such a thread would have been collected and produced in the *Agrovana* case. For these reasons, searching, collecting, and producing this relevant information is neither an undue burden on Prime nor harmful to Paul and KSI. Prime's attempts to overcome relevance fail.

V.    Conclusion

In the deathless words of the Bard of Avalon, "[m]en at some time are masters of their fates." William Shakespeare, *Julius Caesar* Act 1, Scene 2. Through exhaustive marketing and promotion efforts, Paul and KSI voluntarily and inextricably tied themselves to the company they founded and partially own that is a defendant in this action. Paul and KSI must now face the consequences of their choices and participate in discovery in this case.

<u>ORDER</u>

**IT IS THEREFORE ORDERED** that Plaintiffs' request for Prime to designate Paul and KSI as custodians for purposes of electronic discovery is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' request to compel Prime to fully respond to RFP Nos. 41-45 is **GRANTED.**

**IT IS FURTHER ORDERED** that upon receipt of this Order, the Parties shall confer regarding the timeline for which these additional searches and productions can be accomplished and file a joint status report by **Monday, July 20, 2026,** regarding the same.

Copies:          Counsel of Record